815 A.2d 405

H.E.S., PLAINTIFF–RESPONDENT, v. J.C.S.,
DEFENDANT–APPELLANT.

Argued November 7, 2002—Decided February 6, 2003.

312

*Clement F. Lisitski,* argued the cause for appellant.

*Michele C. Verno,* argued the cause for respondent (*Ackerman, Alsofrom & Verno,* attorneys).

*Nancy Goldhill,* submitted a brief on behalf of *amicus curiae* Legal Services of New Jersey (*Melville D. Miller, Jr.,* President, attorney).

*Lawrence S. Lustberg* and *Shavar D. Jeffries,* submitted a brief on behalf of *amicus curiae* New Jersey Coalition for Battered Women, Inc. (*Gibbons, Del Deo, Dolan, Griffinger & Vecchione,* attorneys).

The opinion of the Court was delivered by

COLEMAN, J.

This case requires us to address procedural and substantive issues concerning New Jersey's Domestic Violence Act, *N.J.S.A.* 2C:25–17 to –35. Procedurally, the issues presented are whether defendant's right to due process was violated when he received notice of a domestic violence complaint less than twenty-four hours before trial and when a finding of domestic violence was based on an allegation that was not contained in the complaint. We also must address the novel issue of whether video surveillance by one spouse of the other spouse's bedroom can constitute one of the predicate offenses of domestic violence. The trial court held that defendant had received due process, and that he had committed both harassment in violation of *N.J.S.A.* 2C:33–4 and stalking in violation of *N.J.S.A.* 2C:12–10. The Appellate Division agreed that defendant's due process rights had not been violated, but concluded that the surveillance constituted stalking but not

harassment. We reverse and hold that the trial procedures violated defendant's right to due process. We agree with the trial court that the conduct complained of can constitute both stalking and harassment.

## I.

When this litigation began in August 2000, plaintiff H.E.S. and her husband, defendant J.C.S., had been married for eighteen years. Although they lived in the same house with their two daughters, defendant had occupied a separate bedroom since November 1999. Plaintiff had filed for divorce in June 2000 but defendant may not have been served until August 2000.

Between August 17 and 19, 2000, plaintiff and defendant engaged in numerous altercations resulting in both parties filing domestic violence complaints. On August 21, 2000, defendant filed a domestic violence complaint against plaintiff. The typed complaint specified the following acts allegedly were committed by plaintiff:

ON 8/17/00 DEF[ENDANT, H.E.S.] HAS HAD HER BROTHERS HARASSING AND STALKING PLA[INTIFF, J.C.S.] DUE TO SOME CHURCH PROBLEMS. DEF[ENDANT'S] BROTHERS BROKE WINDOWS IN BOTH OF PLA[INTIFF'S] CARS.

An additional handwritten notation reads:

Pla[intiff] states that def[endant] is constantly harassing him by calling police and making false accusations against him[,] by telling police he is assaulting her [and] locking her in the house.

That complaint was filed on a pre-printed form designed for domestic violence complaints. In answer to the question, "Any prior history of domestic violence?" an "X" was typed next to the printed answer "yes," but the spaces following the instruction "explain & dates" contain only the typed words "NOT REPORTED." A temporary restraining order (TRO) was entered against plaintiff, with a final hearing scheduled for August 31, 2000.

Before a hearing was conducted on defendant's complaint, plaintiff filed a separate domestic violence complaint against defendant

on August 22, 2000. That complaint listed the following acts allegedly committed by defendant:

ON 8-18-00 PLA[INTIFF] CAME HOME FROM CHURCH WITH THE CHILDREN. PLA[INTIFF] COULDN'T GET INTO HER GARAGE BECAUSE DEF[ENDANT] LOCKED SAME. DEF[ENDANT] BEGAN TO YELL AND SCREAM ABOUT HOW HE WAS GOING TO DESTROY PLA[INTIFF] & HER FAMILY. AND THE ONLY WAY PLA[INTIFF] WOULD GET OUT OF THIS MARRIAGE IS BY DEATH.

Plaintiff's complaint was filed on the same previously described pre-printed domestic violence complaint form. The form contained a section for selecting the predicate criminal offenses constituting domestic violence. On plaintiff's complaint, an "X" was typed next to "Terroristic Threats." Neither "Harassment," "Stalking," nor any other predicate offense was checked. In answer to the question, "Any prior history of domestic violence?" an "X" was typed next to the printed answer "yes." However, the only information following the instruction "explain & dates" is the cross-reference "SEE FV 01 321 01C" (referring to defendant's August 21, 2000, complaint against plaintiff).

As a result of plaintiff's complaint, a TRO was entered against defendant with a final hearing scheduled for August 24, 2000. Defendant asserts that on August 23, 2000, a court clerk called him and requested to reschedule the hearing on his complaint to August 24. Defendant agreed. Defendant maintains that he was served with plaintiff's complaint and TRO on August 23, 2000. At the beginning of court proceedings on the complaints on August 24, 2000, defendant's counsel requested a continuance. The court denied the motion and proceeded with trial on both complaints, dismissing defendant's complaint after finding the evidence was insufficient. That matter is not before us.

As for plaintiff's complaint, H.E.S. testified that on August 18, 2000, before she left for church, defendant told plaintiff that if she refused to drop the divorce complaint he would "destroy" her. When plaintiff returned from church and was unable to open the garage door, she and the children went to the front door where defendant met them. Plaintiff testified that defendant let the girls

into the house and then told her, "[H.E.S.], it's over. You're doomed. I will destroy you. The only way you're going to get out of this marriage is by death." She then entered the house, where he allegedly proceeded to "rant and rave," threatening to press charges against her brothers and to have her parents incarcerated.

Plaintiff's counsel then asked plaintiff whether defendant had ever acted that way before. Defense counsel objected, arguing that the complaint failed to give notice of past acts of domestic violence. The court ruled that "what may be in that form may be an issue for cross-examination and credibility, but it doesn't preclude in any way testimony regarding past incidences which are admissible in the court proceeding."

Plaintiff then testified about prior incidents of domestic violence that were not mentioned in her complaint. Specifically, she stated that defendant 1) twice left her stranded without transportation to or from work; 2) locked her in a bedroom, pinned her down and bruised her during an altercation in 1999; 3) verbally abused her in 1991; and 4) on another occasion, hit her and knocked her unconscious.

Next, plaintiff described the video surveillance involved in this appeal. Her attorney produced a "microchip" and plaintiff explained that the "microchip" was a camera and microphone she had found hidden in a picture in her bedroom. Plaintiff called the police, who came to her home and took photographs of the device and the wiring leading from plaintiff's bedroom, over defendant's office, to the attic, and finally into a VCR in defendant's bedroom. Upon finding the surveillance equipment, plaintiff realized how defendant seemed to know details about her daily activity that he otherwise could not have known. Plaintiff was "devastated" by the discovery and felt that this incident was one more reason to "get out." Plaintiff explained that defendant had made several statements to her to the effect that "he understands why husbands kill their wives because it's women like me that make men kill their wives." She testified that defendant had attempted to force

himself on her sexually several times since moving out of their bedroom in November 1999, and that in general she was "terrified" of defendant because "[h]e is over the edge."

During cross-examination, plaintiff was questioned with respect to her failure to specify any prior incidents of domestic violence in her complaint. She stated that she had described other incidents on the Victim Information Sheet that she filled out prior to the preparation of her complaint. That sheet apparently was neither served on defendant nor introduced into evidence.

Defendant objected to having to defend against charges of domestic violence that were not included in the complaint and of which he had no notice. However, the trial court concluded that "[t]hese are summary matters. The complaint does not in and of itself exclude what evidence will be admissible. It does not in any way preclude testimony of past acts of domestic violence." In an attempt to ameliorate due process concerns, the trial court allowed a brief continuance until the next day to permit counsel to consult with defendant. The next day defense counsel asked for another continuance. He argued that he had insufficient time to prepare his defense to allegations of prior acts of domestic violence that he had not known about until the previous day, and that time had not permitted him to subpoena police officers who had been called to the parties' home. The court denied a continuance. The only witness defendant presented was a private investigator, and most of his testimony (regarding police reports of domestic violence at the parties' home) was excluded for hearsay reasons.

The trial court declined to consider many of plaintiff's allegations of prior domestic violence because they were too remote or did not indicate a pattern of violence. The court stated that "[t]his matter contends two things, one, that a terroristic threat was made and/or stalking or even harassment committed on or about [the] 18th of August. So I'm not considering the past acts of domestic violence in making my decision regarding the restraining order filed by [plaintiff] against [defendant]."

The trial court found that the verbal "threat" allegedly made by defendant was not domestic violence but rather was "simply the type of vindictiveness that ... precedes a divorce." However, the court held that defendant's placement of the camera and microphone in plaintiff's bedroom did constitute domestic violence. The court found that defendant's act constituted harassment because it was "designed to alarm or annoy," and also stalking "because it's repetitive activity ... [and was] designed to put an individual in fear ... of harm." Based on the incidents of harassment and stalking, advanced for the first time during the hearing, the trial court issued a final restraining order (FRO) against defendant.

The Appellate Division held that the trial court did not violate defendant's due process rights when it based its finding of domestic violence on incidents not alleged in the complaint. *H.E.S. v. J.C.S.*, 349 *N.J.Super.* 332, 336, 793 *A.*2d 780 (2002). The court stated that " '[t]he previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse' " must be considered in evaluating a domestic violence claim. *Id.* at 341, 793 *A.*2d 780 (quoting *N.J.S.A.* 2C:25–29a(1); citing *Cesare v. Cesare*, 154 *N.J.* 394, 402, 713 *A.*2d 390 (1998); *Corrente v. Corrente*, 281 *N.J.Super.* 243, 248, 657 *A.*2d 440 (App.Div.1995)). The Appellate Division noted that although each act of prior (or subsequent) domestic violence need not be listed in the complaint, the predicate act of domestic violence may not be based on allegations of which a defendant was not given notice. *Id.* at 341–43, 793 *A.*2d 780. The panel, nevertheless, concluded that the notice given here ("overnight") was sufficient. *Id.* at 343, 793 *A.*2d 780. The Appellate Division distinguished *J.F. v. B.K.*, 308 *N.J.Super.* 387, 391–92, 706 *A.*2d 203 (App.Div. 1998) (holding that same-day notice of domestic violence charges violated due process) because that defendant was denied any chance to respond to the complaint and an FRO was issued the same day. In contrast, in this case defendant had overnight to prepare, presented one witness, did not describe what exculpatory evidence he could possibly offer, and most significantly did not take the stand. *Id.* at 343–44, 793 *A.*2d 780. The Appellate

Division also noted that court personnel, rather than plaintiff, were to blame for exclusion from the complaint of the hidden microphone and camera, and that administrative failure "should not inure to plaintiff's detriment any more than to defendant's." *Id.* at 344, 793 *A.*2d 780. The panel concluded that:

What is critical, consistent with *J.F. v. B.K.,* is that a defendant receive notice of the conduct alleged to constitute a predicate offense. The complaint served upon defendant in this case did not provide such notice; nevertheless, we are satisfied that defendant did have actual notice and the opportunity to defend against plaintiff's allegations arising from her August 19 discovery. By allowing trial on those allegations to proceed, the judge effectively allowed plaintiff to amend her complaint. In the alternative, the judge could have required plaintiff to file a new complaint, which then could have been served upon defendant while all the parties were in court. . . . We see no error in the procedure the judge adopted.

[*Id.* at 345–46, 793 *A.*2d 780.]

The Appellate Division also suggested remedial procedures that should be adopted by domestic violence intake workers to ensure proper notice to future defendants, specifically, the inclusion of sufficient space on the complaint form for listing prior acts of domestic violence, and instruction of intake personnel on the importance of including each prior act in the complaint. *Id.* at 345, 793 *A.*2d 780.

The Appellate Division held that defendant's behavior constituted stalking under *N.J.S.A.* 2C:12–10, but not harassment under *N.J.S.A.* 2C:33–4. *H.E.S., supra,* 349 *N.J.Super.* at 336, 793 *A.*2d 780. The applicable provision of the harassment statute requires that a defendant's purpose is "to alarm or seriously annoy." *N.J.S.A.* 2C:33–4c. The Appellate Division held that "the evidence does not support a finding that the perpetrator had either the purpose to harass or to alarm or seriously annoy plaintiff" because he intended the camera to remain hidden. *H.E.S., supra,* 349 *N.J.Super.* at 349, 793 *A.*2d 780. On the other hand, in its discussion of stalking, the Appellate Division noted plaintiff's testimony that "defendant had seemed to know plaintiff's every move for some time before August 19." The court held that placement of the camera met the definition of stalking, which requires behavior that "would cause fear in a reasonable person,

irrespective of whether the perpetrator intended to instill such fear." *Id.* at 350–51, 793 *A.*2d 780.

We granted defendant's petition for certification. 174 *N.J.* 40, 803 *A.*2d 636 (2002).

## II.

Defendant asserts two due process violations. First, he argues that the trial court erred in requiring him to defend against imposition of a final restraining order less than twenty-four hours after receiving the complaint. Second, he contends that refusing to grant an adjournment after plaintiff asserted allegations not contained in the complaint constituted error. Plaintiff responds that defendant had a sufficient amount of time, more than twenty-four hours, to prepare a defense, and that the claimed lack of time did not prejudice his case. We agree with defendant on both of his due process claims.

The Fourteenth Amendment of the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." *U.S. Const.* amend. XIV, § 1. This Court has held that although "Article I, paragraph 1 of the New Jersey Constitution does not [specifically] enumerate the right to due process, [it] protects against injustice and, to that extent, protects 'values like those encompassed by the principle[s] of due process.'" *Doe v. Poritz*, 142 *N.J.* 1, 99, 662 *A.*2d 367 (1995) (internal citation omitted).

Due process is "a flexible [concept] that depends on the particular circumstances." *Id.* at 106, 662 *A.*2d 367 (citing *Zinermon v. Burch*, 494 *U.S.* 113, 127, 110 *S.Ct.* 975, 984, 108 *L.Ed.*2d 100, 114–15 (1990); *Mathews v. Eldridge*, 424 *U.S.* 319, 334, 96 *S.Ct.* 893, 902, 47 *L. Ed.*2d 18, 33 (1976); *Nicoletta v. North Jersey Dist. Water Supply Comm'n*, 77 *N.J.* 145, 165, 390 *A.*2d 90 (1978)). At a minimum, due process requires that a party in a judicial hearing receive "notice defining the issues and an adequate opportunity to prepare and respond." *McKeown–Brand v. Trump*

*Castle Hotel & Casino,* 132 *N.J.* 546, 559, 626 *A.*2d 425 (1993) (citing *Nicoletta, supra,* 77 *N.J.* at 162, 390 *A.*2d 90). As we stated in *Nicoletta,* " '[t]here can be no adequate preparation where the notice does not reasonably apprise the party of the charges, or where the issues litigated at the hearing differ substantially from those outlined in the notice.' " *Supra,* 77 *N.J.* at 162, 390 *A.*2d 90 (quoting *Department of Law and Pub. Safety v. Miller,* 115 *N.J.Super.* 122, 126, 278 *A.*2d 495 (App.Div.1971)).

Although this Court has never addressed the scope of procedural due process protection required in domestic violence proceedings, several Appellate Division opinions have. In *J.F. v. B.K., supra,* 308 *N.J.Super.* at 389, 706 *A.*2d 203, the plaintiff's first domestic violence complaint against the defendant was filed on June 28, 1996, and dismissed after a hearing on July 2, 1996. The plaintiff filed a second complaint against the defendant on February 24, 1997, alleging that he had left notes on her car following a history of domestic violence. *Ibid.* At the final hearing on March 4, 1997, the plaintiff described prior events of domestic violence as well as the note that was the basis for her second complaint. *Id.* at 389–90, 706 *A.*2d 203. The court found that the defendant had harassed the plaintiff and ordered a final restraining order. *Id.* at 390–91, 706 *A.*2d 203. The court's opinion did not mention the note that was the subject of the plaintiff's complaint, but instead based its decision on the alleged prior acts of domestic violence described by the plaintiff during her oral testimony. *Ibid.*

The Appellate Division reversed, concluding that it was "clearly improper" for the trial court to find that the defendant had committed domestic violence by relying on a prior course of conduct not mentioned in the complaint. *Id.* at 391, 706 *A.*2d 203. Noting that the "[d]efendant could not prepare a defense to charges that he was not even told about until the day of the hearing[,]" the court held that "[i]t constitutes a fundamental violation of due process to convert a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint."

*Id.* at 391–92, 706 *A.2d* 203 (citing *Nicoletta, supra,* 77 *N.J.* at 162–63, 390 *A.2d* 90; *Miller, supra,* 115 *N.J.Super.* at 126, 278 *A.2d* 495).

In *Depos v. Depos,* 307 *N.J.Super.* 396, 704 *A.2d* 1049 (Ch.Div. 1997), the trial court addressed a defendant's due process rights in a domestic violence action. The court ruled that, pursuant to *R.* 5:5–1, the defendant had no right to take the plaintiff's deposition. *Id.* at 399, 704 *A.2d* 1049. The defendant made the due process argument that failure to allow a deposition "would put him in the position of defending against 'things he doesn't know about' at the time of the trial." *Id.* at 402, 704 *A.2d* 1049. The court responded that the defendant had a remedy to that situation "if and when matters are testified to which go beyond what plaintiff has alleged in the complaint[,]" the defendant could "request a continuance of the trial in order to prepare a defense[,]" either at the end of the plaintiff's direct testimony or after the plaintiff's case. *Id.* at 402–03, 704 A.2d 1049 (citing *Nicoletta, supra,* 77 *N.J.* at 162, 390 *A.2d* 90).

The Domestic Violence Act requires that a final hearing be held "within 10 days of the filing of a complaint ... in the county where the ex parte restraints were ordered...." *N.J.S.A.* 2C:25–29a. But, as the Appellate Division acknowledged, "the ten-day provision does not preclude a continuance where fundamental fairness dictates allowing a defendant additional time." *H.E.S., supra,* 349 *N.J.Super.* at 342–43, 793 *A.2d* 780. Indeed, to the extent that compliance with the ten-day provision precludes meaningful notice and an opportunity to defend, the provision must yield to due process requirements. *See McKeown–Brand, supra,* 132 *N.J.* at 559, 626 *A.2d* 425; *Nicoletta, supra,* 77 *N.J.* at 162, 390 *A.2d* 90; *cf. In re Commitment of M.G.,* 331 *N.J.Super.* 365, 385, 751 *A.2d* 1101 (App.Div.2000) (holding that due process notice requirement takes precedence over statute requiring execution of sexually violent predator certifications no less than three days before commitment).

■ Further, we reject plaintiff's argument that in this case defendant had ample time to prepare a defense because the hearing did not begin as scheduled at 8:30 a.m. on August 24, 2000. It is not disputed that defendant was served with the complaint on August 23, 2000, and that the matter was scheduled for 8:30 a.m. the following day. That was not adequate time for preparation. Plaintiff's claim that she was acting under similar time constraints is likewise unavailing because she was aware of the allegations in her complaint at least as early as August 22, 2000, when she filed the complaint.

We agree with plaintiff that one reason for holding an expedited hearing to evaluate domestic violence complaints is to protect the interest of both the victim and the accused as quickly as possible. That purpose could have been achieved within the ten-day rule had the trial court granted an adjournment until as late as September 1, 2000. Plaintiff would not have been affected adversely by an adjournment because the TRO would have remained in place until the hearing. Even the Appellate Division agreed that granting a continuance would have been "preferable." *H.E.S.*, *supra*, 349 *N.J.Super.* at 344, 793 *A.*2d 780.

■ Defendant's due process rights were further violated by the trial court's refusal to grant an adjournment after plaintiff alleged an incident of domestic violence not contained in the complaint, namely, use of the hidden camera and microphone in plaintiff's bedroom, and by the court's decision to grant a FRO on the basis of that allegation. *See J.F.*, *supra*, 308 *N.J.Super.* at 392, 706 *A.*2d 203.

It is undisputed that plaintiff's domestic violence complaint did not allege that defendant had harassed or stalked her. Plaintiff argues that she informed domestic violence intake personnel of the incident, and that she should not be prejudiced for their failure to detail the incident in the complaint. However, the record does not contain any asserted prejudice had the trial court granted either of defendant's requests for a continuance because plaintiff would still have been protected by the TRO. As was observed in *J.F.*,

"[i]t constitutes a fundamental violation of due process to convert a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint." *J.F., supra,* 308 *N.J.Super.* at 391–92, 706 *A.*2d 203 (citing *Nicoletta, supra,* 77 *N.J.* at 162–63, 390 *A.*2d 90; *Miller, supra,* 115 *N.J.Super.* at 126, 278 *A.*2d 495). The court's attempt in *H.E.S.* to distinguish *J.F.* on its facts is not persuasive. The fact that defendant's counsel had "overnight to consider his response," *H.E.S., supra,* 349 *N.J.Super.* at 343, 793 *A.*2d 780, does not diminish defendant's due process rights in this case.

We also reject plaintiff's argument that any due process violations were harmless. To support that argument, plaintiff asserts that defendant would be unable to provide any defense if given any amount of time because he has not denied responsibility for placing the microphone and camera in plaintiff's bedroom. We find that argument unpersuasive given the novelty of the factual circumstances and the legal issue involved. Although it is questionable whether defendant would have been able to obtain evidence exonerating him from responsibility for installing the microphone and camera in his wife's bedroom and connecting them to a VCR in his bedroom, enforcement of due process does not depend on guilt or innocence. The procedure employed here "involves such a probability that prejudice will result that it is deemed inherently lacking in due process." *Estes v. Texas,* 381 *U.S.* 532, 542–43, 85 *S.Ct.* 1628, 1632–33, 14 *L.Ed.*2d 543, 549–50 (1965). Accordingly, the FRO is vacated because of due process violations.

### III.

#### A.

Next we consider whether the video surveillance of plaintiff's bedroom presents a prima facie case of stalking or harassment under the Domestic Violence Act. Defendant contends that it does not. The answer determines whether a new hearing on the

FRO should be conducted. The trial court found that defendant's behavior constituted harassment and stalking in violation of the Domestic Violence Act. The Appellate Division, however, held that installation of the video surveillance equipment did "not satisfy the elements of harassment as a matter of law." *H.E.S., supra,* 349 *N.J.Super.* at 336, 793 *A.*2d 780. It affirmed the finding of stalking.

Although there are several ways to prove harassment, for the purposes of this case the relevant criteria are those stated in *N.J.S.A.* 2C:33–4c. A defendant is guilty of the petty disorderly persons offense of harassment if, "with purpose to harass another, he ... [e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." *Ibid.* The Appellate Division found that defendant did not engage in harassment because he placed the camera and microphone in plaintiff's bedroom, not to alarm or annoy her, but simply to watch her covertly. *H.E.S., supra,* 349 *N.J.Super.* at 349, 793 *A.*2d 780. Because defendant obviously did not want plaintiff to find the camera, the Appellate Division held that he could not have intended to annoy or alarm her, and thus one of the elements of *N.J.S.A.* 2C:33–4c is missing. *H.E.S., supra,* 349 *N.J.Super.* at 349, 793 *A.*2d 780. The Appellate Division relied on *State v. Fuchs,* 230 *N.J.Super.* 420, 426–27, 553 *A.*2d 853 (App.Div.1989), and *State v. Zarin,* 220 *N.J.Super.* 99, 101–02, 531 *A.*2d 411 (Law Div.1987), both of which concluded that the harassment statute did not apply to "peeping Toms" because those defendants intended to observe their victims without being discovered. *H.E.S., supra,* 349 *N.J.Super.* at 349, 793 *A.*2d 780.

The Appellate Division, however, failed to consider defendant's behavior that went beyond merely observing his wife in her bedroom. As we noted previously, "courts must consider the totality of the circumstances to determine whether the harassment statute has been violated." *Cesare, supra,* 154 *N.J.* at 404, 713 *A.*2d 390 (citing *State v. Hoffman,* 149 *N.J.* 564, 585, 695 *A.*2d 236 (1997)). The circumstances of this case, according to plaintiff,

reveal that defendant often knew to whom she spoke on the phone, even though her phone only had one line. Plaintiff often saw defendant while she was traveling for her job, even though she knew he had no way of knowing where she would be at a certain time. Plaintiff also alleged that defendant had stolen checks and important papers that she had hidden in her bedroom. She testified that defendant's conduct made her feel as though he "knew [her] every move, [her] every step." In addition, the parties' past history, when properly presented, helps to inform the court regarding defendant's purpose, motive, and intended use of information obtained through the video and audio surveillance of plaintiff's private acts and conversations in her bedroom. If plaintiff is found to be credible, a sufficient evidentiary basis can be found to support a conclusion that defendant had the purpose to harass plaintiff by "repeatedly committ[ing] acts with purpose to alarm or seriously annoy" plaintiff. *N.J.S.A.* 2C:33–4c.

"A finding of a purpose to harass may be inferred from the evidence presented" and from common sense and experience. *Hoffman, supra,* 149 *N.J.* at 577, 695 *A.*2d 236 (internal citations omitted). The alternative requirement that defendant's purpose was to alarm plaintiff requires proof of anxiety or distress. *Id.* at 579, 695 *A.*2d 236. The serious annoyance requirement "under subsection (c) means to weary, worry, trouble, or offend." *Id.* at 581, 695 *A.*2d 236. "Thus, the difference between 'annoyance' and 'serious annoyance' is a matter of degree" and that determination must be made on a case-by-case basis. *Ibid.* We therefore hold that the Appellate Division erred when it concluded that, apparently as a matter of law, defendant's conduct could not constitute harassment under *N.J.S.A.* 2C:33–4c. Under the totality of the circumstances and viewing the evidence presented in a light most favorable to plaintiff, a prima facie case of harassment was established.

### B.

Defendant argues that the Appellate Division erroneously concluded that his conduct amounted to stalking under *N.J.S.A.*

2C:12–10. Specifically, defendant contends that, although the behavior complained of constitutes "boorish and offensive" "snooping," "surveillance by a spouse in the marital home does not constitute domestic violence" as a matter of law. We disagree, and affirm the Appellate Division's interpretation of the stalking statute to include the type of behavior involved here when viewed in the context of the parties' history.

The New Jersey Legislature created the crime of stalking in 1992. *L.* 1992, *c.* 209, effective January 5, 1993. The stalking statute was "intended to protect victims who are repeatedly followed and threatened." *Committee Statement, Senate,* No. 256, *L.* 1992, *c.* 209. The statute has been amended several times since 1992 and currently provides, in pertinent part:

> a. As used in this act:
>
> (1) "Course of conduct" means repeatedly maintaining a visual or physical proximity to a person or repeatedly conveying, or causing to be conveyed, verbal or written threats or threats conveyed by any other means of communication or threats implied by conduct or a combination thereof directed at or toward a person.
>
> (2) "Repeatedly" means on two or more occasions.
>
> . . . .
>
> b. A person is guilty of stalking ... if he purposefully or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear bodily injury to himself or a member of his immediate family or to fear the death of himself or a member of his immediate family.
>
> [*N.J.S.A.* 2C:12–10.]

Defendant argues that his behavior was not stalking under New Jersey law because he did not behave in a "threatening" manner, but merely hid the camera and microphone in plaintiff's bedroom. He alleges that plaintiff did not feel threatened because she continued to live in the same house as he and did not apply for a TRO until after he had obtained one against her. Defendant argues that he "had constant opportunities to be violent if he wanted to" because he lived in the same house with plaintiff, and that conducting surveillance of plaintiff's bedroom "did not create opportunities for violence that were not already there." In other words, defendant argues that such behavior within a marital home cannot constitute stalking because it would not cause a reasonable

person to fear bodily injury. Defendant asserts that the Appellate Division "trivialize[s]" the Domestic Violence Act (quoting *Kamen v. Egan*, 322 *N.J.Super.* 222, 229, 730 *A.2d* 873 (App.Div.1999)) by applying it to his nonviolent "snooping." We reject defendant's arguments.

The law is clear that acts of actual violence are not required to support a finding of domestic violence. The stalking statute was intended "to intervene in repetitive harassing or threatening behavior before the victim has actually been physically attacked." *State v. Saunders*, 302 *N.J.Super.* 509, 520, 695 *A.2d* 722 (App.Div.) (citations omitted), *certif. denied*, 151 *N.J.* 470, 700 *A.2d* 881 (1997). In the domestic violence context, granting a FRO when the defendant has been stalking the plaintiff furthers the Domestic Violence Act's goal of " 'assur[ing] the victims of domestic violence the *maximum protection* from abuse the law can provide.' " *Cesare, supra*, 154 *N.J.* at 399, 713 *A.2d* 390 (quoting *N.J.S.A.* 2C:25–18).

The elements of stalking are that: 1) defendant engaged in speech or conduct that was directed at or toward a person, 2) that speech or conduct occurred on at least two occasions, 3) defendant purposely engaged in speech or a course of conduct that is capable of causing a reasonable person to fear for herself or her immediate family bodily injury or death, and 4) defendant knowingly, recklessly or negligently caused a reasonable fear of bodily injury or death. *State v. Cardell*, 318 *N.J.Super.* 175, 183, 723 *A.2d* 111 (App.Div.) (quoting *N.J.S.A.* 2C:12–10), *certif. denied*, 158 *N.J.* 687, 731 *A.2d* 46 (1999). The mental culpability element, however, was changed to "purposefully or knowingly" by *L.* 1999, c 47, §1, effective March 12, 1999 and codified at *N.J.S.A.* 2C:12–10b.

In this case, it is reasonable to infer that defendant is responsible for installing the surveillance equipment and that he acted "purposefully or knowingly" against "a specific person," his wife. *N.J.S.A.* 2C:12–10. If believed, defendant's behavior would constitute a "course of conduct" because he had "repeatedly ["(over a sufficient period or on a sufficient number of occasions to establish a 'course of conduct' under the statute," *H.E.S., supra*, 349 *N.J.Super.* at 350, 793 *A.2d* 780)] maintain[ed] a visual . . . proxim-

ity to" plaintiff. *N.J.S.A.* 2C:12–10a(1), (2). Also, based on the totality of the circumstances, defendant's surveillance of plaintiff's bedroom, listening to her conversations and then following her after threatening to kill her if she did not drop the divorce action could "cause a reasonable person to fear bodily injury to [her-]self." *N.J.S.A.* 2C:12–10.

The reasonable standard refers to persons in the victim's position and with the victim's knowledge of the defendant. *Cesare, supra,* 154 *N.J.* at 403, 713 *A.*2d 390. "Courts must ... consider plaintiff's individual circumstances and background in determining whether a reasonable person in that situation would have believed the defendant's threat." *Ibid.* (citations omitted). The relevant inquiry in this case is whether a reasonable person in plaintiff's situation, knowing what plaintiff knew about her husband under the totality of the circumstances, would have feared bodily injury as a result of his alleged speech and conduct.

Much of our harassment analysis applies here as well. Defendant observed plaintiff's behavior and listened to private conversations that took place in the privacy of her own bedroom. Defendant allegedly followed plaintiff while she was working, appearing in places where he otherwise could not have known she would be, and allegedly stole items from her bedroom that she had hidden from him. She claims he threatened to kill her unless she dropped the divorce proceedings. We hold that a finder of fact could reasonably have found, based on the totality of the circumstances, that defendant's behavior would have placed a reasonable person in fear of bodily injury. If plaintiff's testimony is believed, she feared her husband not only because of several sporadic prior incidents of physical violence, but also because of his more recent threats that the only way he would let her leave the marriage was "by death." Such threats may be understood to indicate defendant's desire to maintain control over his wife by any means necessary. Appearing while she was traveling for work, seemingly able to know where she would be without being told, could have enhanced plaintiff's feeling of helplessness and inability to escape

defendant. This is the sort of behavior that New Jersey's anti-stalking statute was designed to prevent.

We, therefore, remand the matter to the trial court to conduct new proceedings on the FRO. On remand, the court must consider the totality of the circumstances surrounding the complaint, including past incidents of domestic violence and defendant's behavior after he placed the camera and microphone in plaintiff's bedroom.

## IV.

Finally, defendant asserted during oral argument before this Court that he declined to testify with respect to the camera and microphone at the FRO hearing because he feared that doing so would expose him to criminal charges under the Wiretapping and Electronic Surveillance Control Act, *N.J.S.A.* 2A:156A–1 to –34. That Act provides that "any person who: a. Purposely intercepts [or] endeavors to intercept ... any wire, electronic or oral communication ... shall be guilty of a crime of the third degree." *N.J.S.A.* 2A:156A–3. Appellate Division cases have held that, following the federal wiretap statute, videotape surveillance is not violative of the New Jersey wiretap statute even if there is simultaneous audio surveillance. *Hornberger v. American Broadcasting Cos.*, 351 *N.J.Super.* 577, 619, 799 *A.*2d 566 (App.Div.2002); *State v. Diaz*, 308 *N.J.Super.* 504, 512, 706 *A.*2d 264 (App.Div. 1998). However, defendant's audio surveillance of plaintiff with the microphone component of the camera may fit within that definition. The microphone component of the device planted in plaintiff's bedroom may be an intercepting "device" under *N.J.S.A.* 2A:156A–2d. With that device, he allegedly endeavored to intercept the oral communications of plaintiff while in her bedroom, either with another person or on her private telephone line. *See N.J.S.A.* 2A:156A–2b, –2c. In any event, we comment on that issue only to suggest to the trial court that an unfavorable inference should not be drawn against defendant if he elects not to testify on the remand.

## V.

The judgment of the Appellate Division with respect to due process violations and harassment is reversed. Its judgment finding that the conduct may constitute stalking is affirmed. The matter is remanded to the trial court for new proceedings on the FRO consistent with this opinion.

*For reversing in part/affirming in part/remanding in part*— Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI and ALBIN—7.

*Opposed*—None.