McKEE, J.,
concurring in part and dissenting in part.
I agree with my colleagues’ rejection of all of Aruanno’s claims with the single exception of his claim that he was denied procedural due process because he was not given notice prior to his commitment. Aruanno alleges that “the ex parte order of temporary detention was obtained without notice to plaintiff ... at a time when plaintiff was in the custody of the State of New Jersey, when no good cause or reasonable justification existed that would make it unreasonable or impractical to provide plaintiff with advance notice.” (J.A. 91).
Our review of the Defendants’ motion to dismiss is plenary, and we must accept all factual allegations and the inferences that can be drawn from them as true. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996). For the reasons set forth below, I believe that Aruanno’s preliminary commitment pursuant to the S.V.P. without prior notice is a violation of due process absent extenuating circumstances that are not present here.
I.
At the outset, I think it important to note that my colleagues place far too much emphasis on the fact that Aruanno’s commitment was a civil proceeding. See Maj. Op. at 148 to 150. In Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), the Supreme Court had to determine “whether the involuntary transfer of a Nebraska state prisoner to a mental hospital implicates a liberty interest that is protected by the Due Process Clause.” Id., at 488, 100 S.Ct. 1254. In finding such a protected liberty interest under the Due .Process Clause the Court explained: “[i]f the state grants a prisoner a right or expectation that adverse action will not be taken against him except upon the occurrence of specified behavior, the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process are appropriate.” Id., at 490, 100 S.Ct. 1254 (internal quotations omitted). The Supreme Court thus agreed with the district court’s determination that the transfer “should not be imposed without the opportunity for notice and an adequate hearing.” Id. at 491, 100 S.Ct. 1254.
I agree with the majority’s conclusion that Aruanno’s transfer was civil in nature, just as the transfer in Vitek was. It is nevertheless clear that, absent some emergency justifying a post-deprivation hearing, due process requires notice prior to even a temporary involuntary commitment. “The notice requirement ... no more than recognizes that notice is central to afford the prisoner an opportunity to ... understand what is happening to him.” Id. at 496, 100 S.Ct. 1254. The risk of error in making commitment determinations, particularly where medicine and psychiatry are involved, warrants appropriate procedural safeguards against error. Id.
II.
Thus, absent exigent circumstances, no justification exists for denying Aruanno his *153 due process right to notice prior to his involuntary commitment under the S.V.P. In affirming the district court’s dismissal here, the majority relies in pai’t on Reese v. Nelson, 598 F.2d 822 (3d Cir.1979) and the New Jersey Superior Court’s analysis of N.J.S.A. § 30:4-27.32. However, Reese can readily be distinguished from the circumstances here. Reese had made several credible threats against the government. He even went as telling authorities the precise date on which he was going to detonate a bomb. Nevertheless, he was still afforded prior notice (albeit only 1 hour), and a hearing before commitment was ordered. No such emergency has even been alleged here. The distinction is even more remarkable because Reese had been released to out-patient treatment and was at large in the community at the time of his commitment. Aruanno was securely confined as an inmate in a New Jersey prison facility.
In In re Commitment of M.G., 331 N.J.Super. 365, 751 A.2d 1101 (2000) the New Jersey Superior Court concluded that unless exigent circumstances exist, procedural due process requires that persons who are subject to commitment proceedings receive notice and a hearing prior to commitment. There is only a very limited exception that:
applies in emergency situations, in which the individual is at large in the community or in custody and is believed to be an immediate danger to self, others, or property. The temporal nature of the individual’s immediate condition is the critical element in assessing due process considerations, [and] immediate action without notice based on emergent circumstances is the exception rather than the rule.
751 A.2d at 1107. (Emphasis in original).
Aruanno was initially ordered to be temporarily committed under the provisions of the SVPA. My colleagues stress that “[t]he SVPA provides that the subject of a temporary commitment order is entitled to a hearing within twenty days of entry of the order, ...” See Maj. Op. at 150. However, the Supreme Court of New Jersey has held that a statutory provision requiring even earlier notice did not provide adequate due process.
In H.E.S. v. J.C.S., 175 N.J. 309, 815 A.2d 405 (2003), the New Jersey Supreme Court assessed the validity of a provision of New Jersey’s Domestic Violence Act that required a “final hearing ... ‘within 10 days of ... filing a complaint,’ ” following imposition of ex parte restraints, but allowed for a continuance “where fundamental fairness dictates allowing a defendant additional time.” Id., at 413. In assessing the constitutionality of that provision, the Court stated: “Indeed, to the extent that compliance with the ten-day provision precludes meaningful notice and an opportunity to defend, the provision must yield to due process.” Id. (Citing In re Commitment of M.G.).
It is clear that post-deprivation hearings are appropriate and constitutionally permissible in emergency situations where there is no realistic opportunity to afford prior notice to one whom the state wants to involuntarily commit. That is simply not the situation here, and no one is arguing that it is. The majority claims that Aruanno “does not cite any authority for the proposition that he is entitled to an earlier hearing, notice of the temporary commitment order, or to counsel before the 20-day preliminary hearing.” See Maj. Op. at 150. However, we are reviewing a Rule 12(b)(6) dismissal for failure to state a claim. His complaint clearly does state such a claim. My colleagues preface the aforementioned quote with a citation to Greenfield v. New Jersey Dept. of Corrections, 382 N.J.Super. 254, 888 A.2d 507 *154 (2006). That case supports Aruanno’s claim, not my colleagues’ rejection of it.
In Greenfield, an inmate challenged the denial of an opportunity to review the report that he anticipated the state Attorney General would submit upon the expiration of his sentence as the inmate believed he would then be detained pursuant to the SVPA. He also asked to meet with the committee (the IRC) that determined if referral for subsequent commitment under the SVPA was appropriate. The request was denied, and he appealed the denial of his request by the Department of Corrections. Thus, the court was only reviewing the “defendant’s claim of a right to be heard when the IRC first evaluates him for possible referral to the Attorney General as a candidate for civil commitment.” 888 A.2d at 510. (Emphasis added). Moreover, in affirming the denial of the inmate’s request, the court was careful to note the limited scope of its ruling:
We emphasize the scope of this appeal is quite narrow. It focuses on plaintiffs assertion that the denial of his request constitutes a due process deprivation. There is no doubt that due process requires the opportunity to be heard ‘at a meaningful time and in a meaningful manner.
888 A.2d at 510 (internal quotation marks and citations omitted). Aruanno is not asking to meet with the evaluation committee, to review its report, or be present when he is first evaluated for referral under the SVPA. He is merely asking for advance notice and an opportunity to be heard before he is committed. That is a basic component of the fundamental fairness guaranteed under the Due Process Clause.
In re Commitment of M.M., 384 N.J.Super. 313, 894 A.2d 1158 (2006) which the majority also cites, see Maj. Op. At 150, is not to the contrary. There, the plaintiff appealed from an order that continued her temporary commitment beyond the twenty-day period provided for under the statute. She alleged that the government had not established “exceptional circumstances and good cause justifying the delay or adequate proof that she was a person in need of involuntary commitment.” Id., at 1163. The court there, did state that: “[t]he twenty-day period for pre-hearing detention is deemed constitutionally reasonable because of the urgency at its inception and in order to permit time for preparations essential to a fair and meaningful hearing .as the majority notes at page 12 of its opinion. However, my colleagues fail to note that the court struck down the preliminary order challenged in M.M. for the very same reasons that underlie Aruanno’s challenge to his lack of notice.
A more complete recitation of quotations from the decision in M.M. removes any doubt about the unconstitutionality of preliminary commitment in the absence of an adequate showing of necessity. The court in M.M. explained: “[bjecause the patient’s liberty is at stake, meticulous adherence to statutory and constitutional criteria is required.” 894 A.2d at 1167 (internal quotation marks and citations omitted). The court observed that even though the law allowed for commitment without a prior hearing based upon a showing of probable cause, “it also recognizes that it is exceptional to deprive a person of liberty prior to a hearing on the need for such extraordinary restraint.... Our cases recognize that this pre-hearing confinement is justified only because of the urgency of the threat of serious harm.... ” Id. (Internal citations omitted). It was only at that point in its discussion that the court made the statement relied that the majority cites. Thereafter, the court cautioned that such pre-hearing deprivation is justified only by “exceptional circumstances,” and “good cause” and the court *155 held that “trial courts must take a narrow view of the circumstances that qualify as “exceptional” and establish “good cause.” ” Id., at 1168. The court reversed the order allowing the extension of the plaintiffs preliminary detention because the judge who entered the order “did not even consider whether there were exceptional circumstances and good cause warranting extensions of the statutory period.” Id., at 1169. As I have already noted, neither exceptional circumstances nor good cause are even alleged here.
Moreover, it is no small irony that M.M. at least had the benefit of some process before the court extended the statutory deadline for a hearing on her civil commitment. Given Aruanno’s allegations, we must assume that he did not have any process at all. I therefore can not agree that Aruanno’s preliminary commitment comports with “ ‘meticulous adherence to [the] ... ‘constitutional criteria’ [that] is required” when “the patient’s liberty is at stake.” Id., at 1167.