# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3638-22

S.J.H.,

    Plaintiff-Respondent,

v.

J.X.V.,

    Defendant-Appellant.

_____

Submitted September 25, 2024 – Decided October 28, 2024

Before Judges Marczyk and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FV-14-1177-23.

Borce Martinoski, LLC, attorney for appellant (Borce Martinoski, on the brief).

Respondent has not filed a brief.

PER CURIAM

Defendant J.X.V.[1] appeals from the June 21, 2023 final restraining order (FRO) entered against him and in favor of plaintiff S.J.H. under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.[2]  Following our review of the record and applicable legal principles, we vacate the FRO and remand for further proceedings consistent with this opinion.

I.

Plaintiff and defendant were involved in a volatile dating relationship for three years with a history of alleged domestic violence incidents and mutual restraining orders.[3]  This culminated in an incident on June 4, 2023, when defendant called the police during an argument with plaintiff.  Defendant confronted plaintiff about whether she was cheating on him.  According to defendant, he pointed his finger at plaintiff's face, and she "grabbed [his] finger, pushed [him] back, [ripped his shirt,] made [him] fall on the couch, got on top of [him], [and] started swinging at [him]."  Both parties agreed that plaintiff

---

[1]  We refer to the parties using initials to protect their privacy and the confidentiality of these proceedings.  R. 1:38-3(d)(9).

[2]  An FRO was also entered against S.J.H. in favor of J.X.V.  S.J.H. does not appeal from that order and has not opposed J.X.V.'s appeal in this matter.

[3]  The prior temporary restraining orders (TROs) were dismissed by the parties.

ultimately threw an Advil bottle at defendant injuring his left eye. Observing defendant's visible injuries, police arrested plaintiff for simple assault. Defendant was granted a TRO against plaintiff later that day.

Plaintiff obtained a TRO against defendant on June 5. She alleged that on June 3, defendant accosted her at a bar, pushed her against a wall, and tried to kiss her, and on June 4, defendant slapped her several times.

Plaintiff was served with defendant's TRO on June 4, 2023.[4] Defendant, on the other hand, was not served with plaintiff's TRO until 9:42 a.m. on June 21, 2023, when he arrived at the courthouse for the scheduled hearing on his FRO application.

Defendant was self-represented at the trial. He did not specifically object to the hearing on plaintiff's TRO. However, defendant informed the court of the late service of the TRO, and the issue was briefly addressed on several occasions by the court and defendant.

At the start of the hearing, the judge inquired whether both parties were "ready to proceed today," but no response from the parties is noted in the record.

---

[4] On June 13, 2023, the court entered a continuance order regarding plaintiff's application for an FRO "due to an error in . . . scheduling" and directed the parties to appear for a hearing on June 21, 2023. The order did not reference defendant's application for an FRO.

A-3638-22

Defendant first mentioned he was served with plaintiff's TRO about a third of the way into the three-hour-long hearing. During defendant's explanation of plaintiff's earlier injuries, the following colloquy occurred:

> THE COURT: Well, if you guys are having rough sex, then why did you get a restraining order against her?
>
> [DEFENDANT]: Well, she got one on me, and then my lawyer said I had to get one on her.
>
> THE COURT: That's how it goes?
>
> [DEFENDANT]: That's—that's true. I thought that was—and that's the same thing she's doing now, and now I heard—and[,] <u>actually, I just got it today. I got served today with the restraining order against me</u>.
>
> THE COURT: Okay. Anything else happen that you want the Court to—
>
> (emphasis added).

Defendant again raised an issue regarding late notice of the TRO against him towards the end of the hearing, just before the judge issued his findings:

> [DEFENDANT]: Maybe I should have had a lawyer. Nonetheless, I just got this today.
>
> THE COURT: I asked you if you were ready to proceed. You told me that you were.
>
> [DEFENDANT]: I am.
>
> THE COURT: We are proceeding. We are in this trial now—how many hours?

A-3638-22

. . . .

THE COURT: . . . Two-and-a-half hours.

The trial court granted both parties' FROs. This appeal followed.

II.

Defendant argues the FRO entered against him should be vacated because he did not commit any act of domestic violence, including harassment, N.J.S.A. 2C:33-4, or assault, N.J.S.A. 2C:12-1. He next contends the trial court failed to consider the factors set forth in N.J.S.A. 2C:25-29(a) to determine if an FRO should be entered against him. Defendant further asserts the FRO should be vacated because his due process rights were violated.

We review a Family Part's order, following trial in a domestic violence matter, with "substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). Our Supreme Court has emphasized the "'expertise' of Family Part judges and their ability to assess evidence of domestic violence and determine whether a restraining order is necessary." Ibid. (quoting Cesare, 154 N.J. at 413). An appellate court should

A-3638-22

neither "engage in an independent assessment of the evidence as if [they] were the court of first instance," N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)), nor "disturb the 'factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

[R.G. v. R.G., 449 N.J. Super. 208, 218 (App. Div. 2017).]

We, however, independently review the record to determine whether the record as a whole supports issuance of the FRO. J.D. v. M.D.F., 207 N.J. 458, 488 (2011). "[M]indful of the Family Court's 'special expertise' and the [PDVA's] protective purposes," our Supreme Court has determined that, if orders are unsupported by the record, they should be remanded "to the trial court for a rehearing, both to protect [the] defendant's due process rights and to permit the trial court to evaluate the testimony and the evidence in accordance with the principles" expressed upon the court's review of the record. Ibid.

Questions of law and the applicable legal principles are reviewed de novo. Slawinski v. Nicholas, 448 N.J. Super. 25, 32 (App. Div. 2016) (citing

Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)) ("We owe no . . . deference to the trial judge's legal determinations.").

We will generally refuse to consider an issue not raised and addressed at the trial court level unless it is jurisdictional or "substantially implicate[s] public interest." State v. Walker, 385 N.J. Super. 388, 410 (App. Div. 2006) (citing Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). We may consider an issue not raised to the trial court "if it meets the plain error standard or is otherwise of special significance to the litigant, to the public, or to achieving substantial justice, and the record is sufficiently complete to permit its adjudication." Ibid.

Defendant asserts his due process rights were violated by the delay in service of plaintiff's complaint and TRO until the morning of the FRO hearing. He argues he was provided "inadequate notice" of plaintiff's claims against him.

As stated by our Supreme Court,

> [t]he Fourteenth Amendment of the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This Court has held that[,] although "Article I, paragraph 1 of the New Jersey Constitution does not [specifically] enumerate the right to due process, [it] protects against injustice and, to that extent, protects 'values like those encompassed by the principle[s] of due process.'" Doe v. Poritz, 142 N.J. 1, 99 (1995).

, 175 N.J. 309, 321 (2003) (alterations in original).]

Due process requires, at least, "that a party in a judicial hearing receive 'notice defining the issues and an adequate opportunity to prepare and respond.'" Ibid. (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993)). Without proper notice, "[t]here can be no adequate preparation where the notice does not reasonably apprise the party of the charges, or where the issues litigated at the hearing differ substantially from those outlined in the notice." Id. at 322 (quoting Nicoletta v. N. Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 162 (1978)). Where due process may conflict with the statutory requirement that "a final hearing [shall] be held . . . 'within [ten] days of the filing of a complaint,'" N.J.S.A. 2C:25-29(a), the constitutional protections take precedence. Id. at 323. "Indeed, to the extent that compliance with the ten-day provision precludes meaningful notice and an opportunity to defend, the provision must yield to due process requirements." Ibid.

The statute governing the proceeding at issue here provides that a TRO,

> together with the complaint or complaints, shall immediately be forwarded to the appropriate law enforcement agency for service on the defendant, and to the police of the municipality in which the plaintiff resides or is sheltered, and shall immediately be served upon the defendant along with a copy of the translated

8                                                                    A-3638-22

order, if applicable, by the police . . . . If personal service cannot be effected upon the defendant, the court may order other appropriate substituted service. At no time shall the plaintiff be asked or required to serve any order on the defendant.

[N.J.S.A. 2C:25-28(l).]

Similarly, the relevant regulations promulgated by the New Jersey Supreme Court and the Attorney General require that, when a TRO is issued by the Superior Court, as is the case here:

The Family Division, Domestic Violence Unit must immediately send a copy of the complaint and TRO through eTRO to the municipality where the defendant resides or may be located, and to all law enforcement agencies that can or may assist in the service and enforcement of the TRO. . . .

The complaint and TRO shall be immediately served on the defendant by personal service, by the Municipal, or State police, or the Sheriff's Department.

. . . .

[I]f the defendant appears at the courthouse prior to service of the TRO, Family Division staff may serve the defendant with the TRO and must complete the return of service portion on the TRO.

[Sup. Ct. of N.J. & Att'y Gen. of N.J., New Jersey Domestic Violence Procedures Manual § IV(D)(1) (rev. 2022) (hereinafter D.V. Procedures Manual) (boldface omitted).]

These guidelines emphasize the importance of serving notice on the defendant

9                                                                A-3638-22

in a domestic violence case.  Service of the TRO and complaint on the defendant are vital to the success of the PDVA because failure to do so "compromises the safety of domestic violence victims and undermines defendants' constitutionally guaranteed right to due process of law."  A.M.C. v. P.B., 447 N.J. Super. 402, 406 (App. Div. 2016).

In H.E.S., our Supreme Court held that commencing a hearing less than twenty-four hours after the defendant was served with the complaint deprived the defendant of "adequate time for preparation."  175 N.J. at 324.  The H.E.S. Court held the defendant's due process rights were also violated when he was forced to proceed with the hearing, even "after [the] plaintiff alleged an incident of domestic violence not contained in the complaint."  Ibid.

In considering the due process issue, the record does not reflect whether defendant unambiguously objected to proceeding with the hearing on plaintiff's newly served TRO.  If defendant failed to raise an objection, we review for plain error.  R. 2:10-2.  If, however, defendant raised an objection to proceeding through his tepid statements during the hearing, then the court's decision to proceed should be reviewed for an abuse of discretion.  State v. Smith, 66 N.J. Super. 465, 468 (App. Div. 1961) ("The granting of an adjournment is a matter singularly within the discretion of the trial court and refusal of an adjournment

will not lead to reversal absent manifest wrong or injury to the defendant by reason of such refusal.").

It is not clear if defendant indicated he was prepared to proceed with his case against plaintiff or to defend against plaintiff's claims, or both. Defendant alerted the court several times that he had only been served with plaintiff's TRO upon arriving at the courthouse that day for the hearing on his TRO. The court did not address the late service issue. We understand the court's frustration when defendant reiterated the issue and his concern after several hours of testimony. Nevertheless, in a matter carrying such serious consequences, "the court . . . should have recognized the due process implication of defendant's" indication that he had not been provided proper advanced notice of plaintiff's complaint. J.D., 207 N.J. at 480. The J.D. Court noted, "the trial court must ensure that defendant is afforded an adequate opportunity to be apprised of those allegations and to prepare." Ibid; see H.E.S., 175 N.J. at 324 (concluding that allowing defendant only twenty-four hours to prepare violates due process). The J.D. Court further commented:

> Our courts have broad discretion to reject a request for an adjournment that is ill founded or designed only to create delay, but they should liberally grant one that is based on an expansion of factual assertions that form the heart of the complaint for relief.

11

This is especially true because there is no risk to plaintiff based on such a procedure; courts are empowered to continue temporary restraints during the pendency of an adjournment, thus fully protecting the putative victim while ensuring that defendant's due process rights are safeguarded as well. See Domestic Violence Procedures Manual § 4.12 (2004) (authorizing amendment to complaint and continuation of temporary restraints during period of adjournment).

[207 N.J. at 480 (citation reformatted) (the current version of D.V. Procedures Manual contains a similar provision at § IV(G)(3)).]

Our Supreme Court has held that "[a]lthough defendant's assertion that he [had not been provided sufficient notice] was not cloaked in the lawyer-like language of an adjournment request and was made as part of a longer response to a question, it was sufficient to raise the due process question for the trial court and it should have been granted." J.D., 207 N.J. at 478, 480 (finding the defendant's right to due process had been violated when the plaintiff was permitted "to testify about numerous incidents . . . that were not identified in her complaint").

Here, defendant was forced to defend himself, with no time to prepare, not only against a complaint he did not know existed, but also against allegations involving separate incidents not enumerated in his own complaint. Thus, under either a plain error or a misapplication of discretion standard, the court erred by

failing to adjourn the hearing or further questioning defendant upon learning he had only been served with plaintiff's TRO on the morning of the hearing. The court should have engaged in a more robust colloquy with defendant once it learned of the late service to assure defendant was, in fact, prepared to proceed and was waiving his right to counsel.

Accordingly, we conclude defendant was not afforded due process when the court conducted a hearing on a TRO served on defendant the morning of the hearing, particularly since the TRO contained allegations that differed from those presented in defendant's TRO. Because we are vacating the FRO, we need not reach the remaining arguments raised on appeal.

Although we are mindful of the time and effort the trial court expended in this matter, on remand we direct a different judge be assigned to the case. Pellicer ex rel. Pellicer v. St. Barnabas Hosp., 200 N.J. 22, 59-60 (2009) (citing Entress v. Entress, 376 N.J. Super. 125, 133 (App. Div. 2005)) (remanding to different judge to avoid the appearance of bias or prejudice based upon the judge's prior involvement and credibility determinations).

For the reasons noted above, we vacate the FRO and remand the matter to the trial court for a new trial. We reinstate the TRO, which shall remain in place until the trial court determines whether issuance of an FRO is warranted.

Vacated and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION