# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1481-17T4

E.P.R.,

    Plaintiff-Respondent,

v.

I.M.R.,

    Defendant-Appellant.

_____

           Submitted January 10, 2019 – Decided  July 5, 2019

           Before Judges Whipple and DeAlmeida.

           On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-0446-18.

           Law Offices of Jorge Cruz, attorneys for appellant (Jorge Cruz, of counsel and on the brief; Thomas J. Butler, Jr., on the brief).

           Kathleen B. Estabrooks, attorney for respondent.

PER CURIAM

Defendant appeals from a November 8, 2017 amended final restraining order (FRO) entered by the Chancery Division, Family Part pursuant to the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35. We reverse and remand.

I.

We discern these facts from the trial record. At the times relevant to this appeal, plaintiff and defendant were married, although plaintiff had filed for divorce. They were living apart and sharing custody of their only child.

On September 28, 2017, plaintiff filed a domestic violence complaint and request for a temporary restraining order (TRO) against defendant. She alleged that on September 27, 2017, during the course of an argument via text messaging about defendant's care of their child, defendant subjected plaintiff to insults, name calling, and disparaging remarks, and texted her a photograph of her naked body. Plaintiff alleged that these acts constituted harassment contrary to N.J.S.A. 2C:33-4. She did not allege that defendant's acts constituted cyber-harassment contrary to N.J.S.A. 2C:33-4.1(a). Plaintiff also alleged past acts of domestic violence by defendant.

At the final hearing on the domestic violence complaint, plaintiff testified that on September 27, 2017, she and defendant exchanged text messages

concerning their child having contracted conjunctivitis while in defendant's custody. According to plaintiff, defendant called her several derogatory names prior to stating that "for someone who spends money going to the gym and working out, that if I had showed more effort, then maybe I would see better results[.]" Plaintiff testified that she recognized that statement as defendant's "way of . . . attacking me . . . through my body and image." In addition, plaintiff testified that defendant "proceeded to send me a picture of myself . . . and in that picture he made fun of my body." The photograph to which plaintiff referred depicted her nude body. Plaintiff testified that she had not consented to having that photograph taken and that she had not seen it prior to receiving it embedded in defendant's text message. The photograph was accompanied by a text message from defendant purportedly complimenting plaintiff's body along with an emoji representing sarcasm. Plaintiff testified that she was "extremely upset" after receiving the photograph because it "was so easily sent" and was in defendant's possession.

During her testimony, plaintiff also detailed a number of past instances of domestic violence. According to plaintiff, defendant: (1) in June 2017, with their child present, punched her in the mouth and slapped a phone out of her hand when she attempted to call police; (2) drank excessively on numerous

occasions and pushed plaintiff, smacked her, or put his hands around her neck, sometimes leaving visible marks, in attempts to force her to have sex without her consent; (3) activated a cellphone service to track plaintiff's movements without her consent; (4) on multiple occasions used a telephone application to anonymously text both plaintiff and her employer, resulting in her loss of employment; and (5) frequently subjected plaintiff to derogatory name calling, sometimes in the presence of others.

With respect to the events of September 27, 2017, defendant admitted he argued with plaintiff via text message and called her insulting names. He also admitted sending the photograph to plaintiff, but testified that he did so only after she made disparaging remarks about his body. He testified that he did not intend to annoy or alarm plaintiff by sending the photograph, but intended to hurt her feelings. Defendant testified that he and plaintiff often took photographs of each other during their marriage, including naked photos, that he had never taken a photograph of plaintiff's nude body without her consent, and that he did not, and did not threaten to, send the photograph to anyone other than plaintiff.

With respect to the alleged prior incidents of domestic violence, defendant denied punching plaintiff in the mouth. He testified that he struck her mouth

accidently while attempting to remove her hand from his neck, which she had grabbed during an argument. Defendant also denied having knocked a telephone out of plaintiff's hand. He testified that he accidentally activated the cellphone service to track plaintiff's location and denied having used a phone application to call plaintiff or her employer anonymously. Finally, defendant denied drinking excessively and testified that he never used physical force in an attempt to engage in sex with plaintiff without her consent.

At the conclusion of the testimony, the trial court issued a bench opinion. After setting forth the definition of both harassment and cyber-harassment, the court, with respect to the September 27, 2017 incident, stated:

> [T]he [c]ourt finds that there is insulting language used back and forth but the [c]ourt finds that the defendant candidly admitted in this case that he used insulting language, that he has used name calling[.]

The court immediately thereafter mentioned, for the first time, the cyber-harassment statute:

> The nude photograph is particularly compelling, particularly in light of the recent amendments to the harassment statute and the addition of [N.J.S.A.] 2C:33-4.1, section [two] where this [c]ourt finds the husband knowingly sent a lewd, indecent or obscene material to the plaintiff with an intent to emotionally harm a reasonable person or place her in emotional harm of her person. . . . [T]he cyber[-harassment] statute has been amended to include the posting of a

nude photograph or a lewd, indecent or obscene material with an intent to put a person in emotional harm and the [c]ourt can find that by the defendant's admission that he sent it, admission that he has others on his phone, admission that he does [not] know how many, his veiled excuse that he hid behind the fact that they were married, leads this [c]ourt to conclude that the plaintiff is more credible than the defendant on this point.

The court found that there were prior instances of defendant harassing and "possibly" assaulting plaintiff. The court found credible plaintiff's testimony regarding defendant striking her in the mouth and harassing her through a cellphone service that tracked her location. The court concluded that the record lacked sufficient evidence on which it could determine if defendant interfered with plaintiff's employment by calling her employer anonymously.

The court did not engage in the second prong of the two-prong analysis set forth in Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006) – that a restraining order is required to protect the plaintiff from future acts or threats of violence. Instead, the court concluded:

Because the [c]ourt has found by a preponderance of the evidence that there was a violation of the harassment section and the cyber[-]harassment section, the [c]ourt will enter a domestic violence restraining order.

A-1481-17T4

The court thereafter entered an FRO. The court also ordered defendant to obtain a substance abuse evaluation, to delete all nude or lewd photographs of plaintiff in his possession, and pay a $100 penalty. On November 8, 2017, the trial court entered an amended FRO with changes not material to the issues before this court.

This appeal followed. Defendant raises the following argument for our consideration:

> THE TRIAL COURT BELOW IMPROPERLY, ON [ITS] OWN ACCORD, APPLIED THE PREDICATE ACT OF CYBER[-]HARASSMENT WHEN SAME WAS NEVER PLEAD OR PRESENTED TO [THE TRIAL COURT] BY THE RESPONDENT, HENCE DENYING THE APPELLANT THE ABILITY TO PREPARE A PROPER DEFENSE FOR THE FINAL HEARING.

II.

The entry of an FRO requires the trial court to make certain findings. The court first "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. The court should make this determination "in light of the previous history of violence between the parties." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 402 (1998)). Next, the court must determine "whether a restraining order is necessary, upon an evaluation of the

7

factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b)); see also J.D. v. M.D.F., 207 N.J. 458, 476 (2011).

The trial court found that defendant committed two predicate acts set forth in N.J.S.A. 2C:25-19(a): harassment, contrary to N.J.S.A. 2C:33-4, and cyber-harassment, contrary to N.J.S.A. 2C:33-4.1(a). Defendant argues that he was not on notice prior to the hearing that plaintiff alleged a violation of the cyber-harassment statute, depriving him of due process. We agree.

"Due process is 'a flexible [concept] that depends on the particular circumstances.'" H.E.S. v. J.C.S., 175 N.J. 309, 321 (2003) (alteration in original) (quoting Doe v. Poritz, 142 N.J. 1, 106 (1995)). "[I]t constitutes a fundamental violation of due process to convert a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint." Id. at 325 (quoting J.F. v. B.K., 308 N.J. Super. 387, 391-92 (App. Div. 1998)). "What that means is that [a]t a minimum, due process requires that a party in a judicial hearing receive notice defining the issues and an adequate opportunity to prepare and respond." J.D., 207 at 478 (alteration in original) (quotations omitted).

> There can be no adequate preparation where the notice does not reasonably apprise the party of the charges, or

where the issues litigated at the hearing differ substantially from those outlined in the notice. It offends elemental concepts of procedural due process to grant enforcement to a finding neither charged in the complaint nor litigated at the hearing.

[Nicoletta v. N. Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 162 (1978) (quotation omitted).]

The definitions of harassment and cyber-harassment differ in significant ways. A person commits harassment, if, with purpose to harass another, he or she:

> a. [m]akes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. [s]ubjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. [e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4.]

On the other hand,

> [a] person commits the crime of cyber-harassment if, while making a communication in an online capacity via any electronic device or through a social networking site and with the purpose to harass another, the person:

(1)    threatens to inflict injury or physical harm to any person or the property of any person;

(2)    knowingly sends, posts, comments, requests, suggests, or proposes any lewd, indecent, or obscene material to or about a person with the intent to emotionally harm a reasonable person or place a reasonable person in fear of physical or emotional harm to his [or her] person; or

(3)    threatens to commit any crime against the person or the person's property.

[N.J.S.A. 2C:33-4.1(a).]

Plaintiff's complaint alleges only that the September 27, 2017 incident constituted harassment. Although the complaint contained a box which plaintiff could have checked to allege that defendant's acts constituted cyber-harassment, she did not do so. It was not until the court first mentioned the cyber-harassment statute while rendering its decision that defendant was put on notice that cyber-harassment was being considered by the court as a predicate act under N.J.S.A. 2C:25-19(a). Defendant was therefore denied an opportunity to prepare his defense against an allegation of cyber-harassment, resulting in a denial of due process.

We acknowledge that the complaint alleged that defendant sent plaintiff a photograph of her nude body after an argument via text messaging. While this act might constitute one of the elements of cyber-harassment, it also could

10

constitute one of the elements of harassment. The fact that plaintiff alleged the electronic transmission of a photograph of her nude body is not, standing alone, sufficient to put defendant on notice that she alleged a violation of the cyber-harassment statute. This is particularly true where the complaint contained an option for alleging cyber-harassment not selected by plaintiff. We therefore reverse the trial court's conclusion that defendant violated N.J.S.A. 2C:33-4.1(a).

Our review of the record reveals that the trial court's findings of fact supporting its conclusion that defendant violated N.J.S.A. 2C:33-4 are insufficient for effective appellate review. "In our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). We should not disturb the "factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Deference is particularly appropriate when the evidence is testimonial and involves credibility issues

because the judge who observes the witnesses and hears the testimony has a perspective the reviewing court does not enjoy. Pascale v. Pascale, 113 N.J. 20, 33 (1988).

However, Rule 1:7-4(a) states that a trial court "shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury[.]" "The rule requires specific findings of fact and conclusions of law[.]" Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 1:7-4 (2019). Here, the trial court did not make specific findings with respect to whether plaintiff established each of the elements of N.J.S.A. 2C:33-4, including defendant's intent during the September 27, 2017 electronic exchange with plaintiff. In addition, as noted above, the trial court failed to address in its findings of fact and conclusions of law the second prong of the Silver analysis.

We are constrained therefore to remand the matter for clarification, based on the existing record, of the trial court's findings of fact and conclusions of law with respect to whether defendant violated N.J.S.A. 2C:33-4 on September 27, 2017, and whether entry of an FRO is warranted under the two-prong test set forth in Silver. The clarification shall be completed within thirty days. The FRO shall remain in place during the remand proceedings.

A-1481-17T4

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1481-17T4