# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3506-18

A.M.,

      Plaintiff-Respondent,

v.

M.K.,

      Defendant-Appellant.

_____

Submitted February 24, 2021 – Decided June 28, 2021

Before Judges Alvarez and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Warren County, Docket No. FV-21-0400-19.

Pierce L. Butler, attorney for appellant.

A.M., respondent pro se.

PER CURIAM

Defendant M.K.[1] appeals from a March 7, 2019 final restraining order (FRO) entered under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, based on the predicate act of harassment, N.J.S.A. 2C:33-4(a). He argues that there was insufficient evidence to establish that he harassed plaintiff, his ex-girlfriend, or that she needed the protection of the FRO. He also argues that it was an error to add plaintiff's current boyfriend as a protected person under the FRO. We reject defendant's first argument but hold that plaintiff's boyfriend should not have been added to the FRO. Accordingly, we affirm the FRO in favor of plaintiff, but remand for the entry of an amended FRO removing plaintiff's boyfriend as a protected person.

On February 14, 2019, plaintiff obtained a temporary restraining order against defendant, alleging that he was harassing her by frequently contacting her despite her objections. A trial on the FRO was held on March 7, 2019, during which plaintiff and defendant testified.

The following facts are derived from the trial record. Plaintiff and defendant had a tumultuous, "on and off" relationship from April to December 2018. Although the parties did not reside together, defendant would often stay

---

[1] We use initials to preserve the confidentiality of court records concerning domestic violence. R. 1:38-3(d)(9).

at plaintiff's residence. Notwithstanding the fact that the parties testified the relationship ended on December 6, 2018, the parties remained in contact for the next month.

By January 10, 2019,[2] however, the parties seemingly had a more serious falling out because plaintiff accused defendant of having relationships with other women. Defendant attempted to reconcile the relationship, but plaintiff responded on multiple occasions "leave me . . . alone." Indeed, plaintiff indicated that she had "had enough."

Beginning on January 19 and continuing into the early morning of January 20, 2019, defendant sent plaintiff approximately twenty-four unanswered text messages. After a short conversation, plaintiff eventually responded "[j]ust leave me the hell alone." In the afternoon on January 21, 2019, defendant called plaintiff eight times. Apparently realizing plaintiff had blocked his number, defendant sent her a string of emails starting on January 21, 2019. One email stated that he "will now make it a point to insert [himself] into [her] life." He then emailed her that he "would never cross that line[,] but now [he'd] make sure that [he] [did]." Defendant sent plaintiff seventeen unreturned emails in a seven-

---

[2] Plaintiff testified that on January 8, 2019, defendant called plaintiff twenty times between the hours of 12:35 a.m. and 10:46 a.m.

A-3506-18

hour period. In response, plaintiff told him to "leave [her] alone" twice. From 12:38 a.m. to 3:30 a.m. on January 22, 2019, defendant called plaintiff six times and sent multiple emails. Around 2:00 a.m. on January 25, 2019, defendant called plaintiff fifteen times.

Plaintiff testified that defendant's repeated communications and "obsessive behavior" made her "worried and scared." She indicated that in September 2018, defendant showed up at her house, unannounced, "banging" on her door for nearly ten minutes. She also claimed that in December 2018, defendant showed up to her house "drunk out of his mind" and was "banging on the door for five minutes."

At the close of plaintiff's case, defense counsel moved for an involuntary dismissal under Rule 4:37-2(b). The judge denied the request, finding that plaintiff established a prima facie case under Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

Following the close of evidence, the Family Part judge rendered a thorough oral decision. The judge found plaintiff to be "entirely credible" because "her recollection of the events was accurate" and she "provided detailed testimony." Based on plaintiff's testimony and the corresponding documentation, and notwithstanding the absence of any physical violence, the

judge concluded that plaintiff proved, by a preponderance of the evidence, that defendant committed the predicate act of harassment, N.J.S.A. 2C:33-4(a). The judge found defendant was "constantly trying to communicate with [plaintiff] at extremely inconvenient hours" with the purpose of harassing her. Even affording defendant the benefit of the doubt with respect to some of the messages, the judge determined that "to keep going every [five], [ten], [fifteen] minutes between the hours of 8:51 p.m. to the next day" evinced an intent to harass plaintiff.

Turning to the second prong of Silver, the judge held that plaintiff met her burden of proof that her well-being is or would be endangered by defendant's repeated contact with her. The judge, crediting plaintiff's testimony, noted that in the past defendant had shown up at plaintiff's house unannounced. The judge also found that plaintiff was "scared" because she believed defendant was obsessed with her and found ways to contact her even after being blocked. The judge entered an FRO, which included plaintiff's current boyfriend, B.B., as a protected person. This appeal ensued.

"In our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429

N.J. Super. 592, 596 (App. Div. 2013) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "This deferential standard is even more appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 533 (App. Div. 2011) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). We "should not disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). However, we review de novo "the trial judge's legal conclusions, and the application of those conclusions to the facts." Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

The entry of an FRO requires the trial judge to make certain findings pursuant to a "two-fold" analysis. Silver, 387 N.J. Super. at 125-27. "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125. Second, if a predicate act has been proven, the judge must determine whether a restraining order is necessary, after

evaluating the factors set forth in N.J.S.A. 2C:25-29(a), "to protect the victim from an immediate danger or to prevent further abuse." Id. at 127; see also J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011).

Harassment, as defined by N.J.S.A. 2C:33-4, is one of the predicate acts of domestic violence. N.J.S.A. 2C:25-19(a)(13). Harassment occurs when one:

> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4.]

"A finding of a purpose to harass may be inferred from the evidence presented" and from "[c]ommon sense and experience." State v. Hoffman, 149 N.J. 564, 577 (1997). Indeed, courts must be mindful that "a party may mask an intent to harass with what could otherwise be an innocent act," J.D., 207 N.J. at 488, and "must consider the totality of the circumstances to determine whether the harassment statute has been violated." H.E.S. v. J.C.S., 175 N.J. 309, 326 (2003) (quoting Cesare, 154 N.J. at 404).

7

Applying the deferential standard of review that governs this appeal, we find no error in the trial judge's entry of an FRO. The multitude of "communications" sent to plaintiff "at extremely inconvenient hours" assuredly satisfies the predicate act of harassment. N.J.S.A. 2C:33-4(a). Contrary to defendant's argument, the absence of violence or physical threats is inconsequential. Although the prevention of physical harm is without question one of the statute's most critical objectives, the PDVA also protects domestic violence victims from emotional harm and control inflicted by domestic violence offenders. The Legislature stated unequivocally its intent "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. The definition of domestic violence set forth in N.J.S.A. 2C:25-19(a)(13), moreover, expressly includes harassment under all sections of N.J.S.A. 2C:33-4, thereby encompassing verbal, non-physical forms of harassment. Based on these principles, we discern no error in the Family Part judge's conclusion that, as to A.M., an FRO was warranted.

We reach a different conclusion, however, with respect to the inclusion of B.B. in the FRO. He clearly would qualify as a protected person under the PDVA. See N.J.S.A. 2C:25-19(d) (defining "[v]ictim of domestic violence" as "any person who has been subjected to domestic violence by a person with whom

the victim has had a dating relationship." (emphasis added)). The only facts borne out by the record with respect to B.B., however, are that defendant was aware of him, followed him on Instagram, and wrote one disturbing email to A.M. that he would "smash [B.B.'s] face in" if he saw him. Although troubling, these facts are insufficient to prove that defendant committed one of the predicate offenses under the PDVA against B.B. Therefore, we are constrained to remand this matter with direction that B.B. be removed from protection under the FRO.

Affirmed as modified and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3506-18