# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2300-19
A-2875-19

S.M.M.,

     Plaintiff-Respondent,

v.

J.M.P.,

     Defendant-Appellant.

_____

J.M.P.,

     Plaintiff-Appellant,

v.

S.M.M.,

     Defendant-Respondent.

_____

Argued September 16, 2021 – Decided March 4, 2022

Before Judges Fuentes, Gilson, and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket Nos. FV-07-3463-19 and FV-07-3630-19.

Bonnie C. Frost argued the cause for appellant (Einhorn, Barbarito, Frost & Botwinick, attorneys; Bonnie C. Frost, Matheu D. Nunn and Jessie M. Mills, on the briefs).

Lizanne J. Ceconi argued the cause for respondent (Ceconi & Cheifetz, LLC, attorneys; Lizanne J. Ceconi, Kimberly A. Rennie and Kaitlyn A. McDonald, on the brief).

PER CURIAM

J.M.P. (Joe) and S.M.M. (Sue) were married but were in the process of divorcing when they filed claims against each other under the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35.[1] Joe appeals from (1) a final restraining order (FRO) entered in favor of his wife, Sue; and (2) an order dismissing his complaint seeking an FRO against Sue. We address both appeals in this consolidated opinion.

The orders were entered following a fifteen-day trial on the competing domestic violence claims. Joe challenges the orders on multiple grounds, but most of his arguments are based on his disagreements with the facts found by

---

[1] We use initials and fictitious names to protect privacy interests and the confidentiality of the record. R. 1:38-3(d)(9).

the trial court and the court's application of those facts to the law. Because the trial court's factual findings are supported by substantial credible evidence, and those facts were correctly applied to the law, we affirm both orders.

I.

The parties were married in July 2005, and they have two minor children: a son and a daughter. In early 2019, Sue consulted with an attorney in contemplation of divorcing Joe. Thereafter, the parties' relationship continued to deteriorate, with Sue seeking to track Joe's activities and the parties engaging in escalating arguments.

On May 26, 2019, the parties had an argument that became physical. Sue applied for and obtained a temporary restraining order (TRO) alleging that Joe had physically assaulted her by choking her. Approximately two weeks later, Joe obtained a TRO against Sue, alleging harassment, assault, stalking, and terroristic threats. Thereafter, both parties amended their domestic violence complaints. Sue added a claim of contempt, asserting that Joe had violated the restraints against him. Joe added a claim that Sue had engaged in cyber-harassment.

The domestic violence complaints were tried together over fifteen days between July and November 2019. Sue and Joe testified, and they were both

represented by counsel. The court also heard testimony from ten other witnesses and reviewed over 100 exhibits. After considering all the evidence, the trial judge, Judge David Katz, made detailed findings of fact and conclusions of law that he set forth on the record on November 13, 2019. He then entered orders granting an FRO in favor of Sue and dismissing Joe's complaint and TRO against Sue.

Judge Katz started his opinion with a review of the witnesses' testimony and their credibility. Judge Katz found Sue to be credible, explaining that her testimony was generally consistent and was corroborated by another witness and exhibits. In contrast, Judge Katz found Joe to be generally incredible. The Judge noted that Joe's testimony was often inconsistent and often at odds with exhibits.

Judge Katz found most of the other witnesses to be credible. In particular, he relied on the testimony of D.A. (Diane), a mutual friend of the parties. Based on his review of the facts, Judge Katz found that Diane's testimony often corroborated and supported Sue's testimony. The Judge also found the testimony of the three police officers credible. The officers' testimony did not undercut Sue's claims but was not always consistent with Joe's claims. In assessing the testimony by Joe's stepmother, the Judge found that she was

sincere in her views but was at times mistaken on the facts. The Judge found the testimony from Joe's mother provided little factual relevance to the domestic violence that occurred.

After detailing his credibility findings, Judge Katz addressed Sue's claims. The principal incident that gave rise to Sue's allegation of assault occurred on May 26, 2019. Judge Katz found that the parties had an argument that day and during the argument Joe grabbed Sue by the neck and choked her. Sue then fell backwards, bumping her tailbone and hitting her elbow. Based on the choking and the resulting bruising, Judge Katz found Joe had committed a simple assault on Sue.

Judge Katz then analyzed Sue's need for a restraining order. He found two factual bases that supported that need. First, he found that the assault itself was egregious enough to cause concern for her well-being and safety. Second, Judge Katz reviewed certain events that occurred before the assault. He found that Joe's actions towards and mistreatment of Sue had been escalating. In that regard, he found that Joe had been verbally abusive to Sue, and he had repeatedly thrust his chest towards her in a confrontational manner. Accordingly, Judge Katz found that there was a history of domestic violence that put Sue "at risk," justifying the need for an FRO.

A-2300-19

Next, Judge Katz analyzed Sue's claim of contempt. Relying on our decision in State v. D.G.M., 439 N.J. Super. 630 (App. Div. 2015), he reasoned that photographing or filming a party protected by a restraining order can, under certain circumstances, constitute a form of communication or conduct that violates the restraining order. The Judge then found that Joe had taken a picture of Sue on June 22, 2019, in violation of the TRO. Specifically, Judge Katz found that Joe knew he was under restraints that prevented him from communicating with Sue, he went to a location (Hartshorn Drive) where he knew Sue would be, and he "purposely and knowingly disobeyed" the TRO by photographing Sue.

Turning to Joe's complaint against Sue, Judge Katz reviewed each of the predicate acts Joe had alleged Sue committed. Those predicate acts included stalking, harassment, assault, and cyber-harassment.

Joe alleged that Sue had stalked and harassed him by placing a GPS device on his truck and following him to various locations, including a restaurant in Summit. Judge Katz found that Sue had not stalked Joe. Although he found that she had placed a GPS device on his truck and he found that Sue often called Joe at various times, he found that those actions were not committed with the purpose to stalk or harass Joe. Instead, Judge Katz found that Sue was concerned about her marriage and the unusual behavior being exhibited by Joe. The Judge

6

also found that Joe had no fear of Sue and thus he had not established a necessary element of stalking.

Joe also alleged that Sue had assaulted and harassed him by ripping his shirt one morning as he was driving her to the train station, by striking him during the May 26, 2019 argument, and by pushing and hitting him on other occasions. Judge Katz analyzed each of those claims and found that they were incredible, and Sue had no purpose to harass Joe. Concerning the argument on May 26, 2019, Judge Katz found that Sue had no purpose to harass Joe during that argument, Sue had not purposely or recklessly physically touched Joe, and, therefore, she had not assaulted or physically harassed him during that argument.

Finally, Joe claimed that Sue had engaged in cyber-harassment by sending him improper text messages, threatening to distribute a picture in a restaurant to another person, and accessing his iPad. Judge Katz rejected those claims, finding that Sue had properly accessed an iPad, which was used by various members of the family. Judge Katz also found that when Joe changed the password to that iPad, he had given the new password to Sue. Judge Katz also found that Sue had not engaged in cyberbullying because she did not threaten Joe and did not have a purpose to harass Joe when she sent him text messages or said she was going to distribute a picture.

A-2300-19

After making those detailed credibility and factual findings, Judge Katz identified and analyzed the relevant law concerning the various predicate acts and applied his factual findings to that law.

## II.

In separate appeals, Joe challenges the two orders entered by Judge Katz on November 13, 2019. Specifically, Joe appeals from the order granting an FRO to Sue and the order dismissing his complaint and TRO against Sue. In challenging both those orders, Joe makes numerous arguments, but essentially he disputes the facts found by Judge Katz and how the Judge applied those facts to the law. Because all the material factual findings by Judge Katz were supported by substantial credible evidence, and he correctly applied the facts to the law, we affirm both orders.

### A. Our Standard of Review.

Our scope of review of the grant or denial of an FRO is limited. See Cesare v. Cesare, 154 N.J. 394, 411 (1998). We accord substantial deference to family judges' findings of fact because of their special expertise in family matters. Id. at 413. That deference is particularly strong when the evidence is largely testimonial and rests on a judge's credibility findings. Gnall v. Gnall, 222 N.J. 414, 428 (2015). We will "not disturb the 'factual findings and legal

A-2300-19

conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "[W]e owe no deference to a trial court's interpretation of the law, and review issues of law de novo." Cumberland Farms, Inc. v. N.J. Dep't of Envt'l Prot., 447 N.J. Super. 423, 438 (App. Div. 2016).

When determining whether to grant an FRO under the Act, a judge must make a two-part analysis. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. Second, the judge must determine whether a restraining order is necessary to protect the party seeking it from immediate harm or further abuse. Id. at 127.

B. The FRO In Favor of Sue.

In support of her request for an FRO, Sue alleged a predicate act of assault. She also claimed that Joe had acted in contempt of the TRO.

1. The Assault.

A person is guilty of assault if he or she:

(1) [a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or

(2) [n]egligently causes bodily injury to another with a deadly weapon; or

(3) [a]ttempts by physical menace to put another in fear of imminent serious bodily injury.

[N.J.S.A. 2C:12-1(a)(1) to (3).]

Crediting the testimony of Sue, Judge Katz found that Joe had grabbed Sue's neck and choked her during an argument on May 26, 2019. He also found that Joe's actions caused Sue to fall backwards, and she hit her tailbone and bumped her elbow on a granite countertop, causing her minor injuries. Judge Katz also credited Sue's testimony that the choking caused bruising and he corroborated that testimony by viewing photographs and considering the testimony of Diane. All those findings are supported by substantial credible evidence. Moreover, the application of those factual findings to the elements of a simple assault support Judge Katz's conclusion that Joe assaulted Sue.

In challenging the findings of assault, Joe makes two arguments. First, he contends that the trial court's finding of a simple assault was "conclusory" because the Judge failed to correlate his findings with the legal conclusions. Second, he argues that the trial court's findings regarding the May 26, 2019 incident were inconsistent with the testimony of the police officers and certain

documents. We reject those arguments. The analysis we have set forth above refutes Joe's contention that Judge Katz's factual findings were conclusory and that they failed to correlate with the elements of a simple assault.

In challenging the factual findings, Joe contends that Judge Katz's findings concerning the May 26, 2019 incident, Sue photographing Joe at the restaurant, the June 22, 2019 incident, Joe's drop-offs of the children after parenting time, and the May 1, 2019 incident are all inconsistent with evidence in the record. Having reviewed the record, the evidence Joe points to does not support his arguments. Judge Katz did just what a trial judge has to do; he reviewed all the evidence, some of which was conflicting, and made factual findings. All the findings that Joe challenges are supported by substantial credible evidence. The evidence that Joe points to either was considered by and rejected by Judge Katz or is not sufficiently material as to undermine the credibility of the findings made by Judge Katz.

2. The Contempt.

Contempt of a restraining order issued under the Act is a predicate act. N.J.S.A. 2C:25-19(a)(17). A person is guilty of contempt if he or she "purposely or knowingly violates any provision in an order entered under the provisions of the [Act]." N.J.S.A. 2C:29-9(b)(1). A person acts "purposely" if he or she

consciously engages in conduct or causes a certain result.  N.J.S.A. 2C:2-2(b)(1).  A person acts "knowingly" if he or she is aware of his or her conduct, the circumstances surrounding his or her conduct, or is aware of a high probability that those circumstances exist.  N.J.S.A. 2C:2-2(b)(2).

In D.G.M., defendant violated a restraining order when he filmed the domestic violence victim using his cell phone camera while seated near her at their child's soccer game.  439 N.J. Super. at 640.  We reasoned that the defendant engaged in "communication," in violation of the restraining order, because the act of filming the victim sends a message that may be sufficiently alarming, annoying, or threatening to constitute the type of prohibited conduct contemplated by the Legislature.  Ibid; see also N.J.S.A. 2C:25-29(b)(7) (order restraining defendant from contacting a domestic violence victim prohibits defendant from "initiating any communication likely to cause annoyance or alarm including . . . personal, written, or telephone contact with the victim").

Although defendant's contempt conviction in D.G.M. was premised on his violation of the restraining order, we did not uphold that finding.  D.G.M., 439 N.J. Super. at 641-42.  Instead, we reversed the conviction, applying the rule of lenity after reasoning that defendant could not have known with

sufficient certainty that filming the victim constituted prohibited communication under the restraining order. Ibid.

In relying on our holding in D.G.M., Judge Katz found that Joe committed the predicate act of contempt when he took a picture of Sue during the June 22 incident on Hartshorn Drive. Moreover, Judge Katz rejected the application of the rule of lenity to Joe's contempt. Instead, he found Joe should have known that photographing Sue was a violation of the restraining order. In reaching that conclusion, Judge Katz found that Joe "purposely and knowingly disobeyed" the restraining order by photographing Sue.

Joe argues the trial court's finding of contempt was "conclusory" and that the court misapplied the law from D.G.M. He contends the facts in D.G.M. are different from this case because an FRO was in effect when defendant filmed the domestic violence victim but there was no FRO at the time Joe photographed Sue. He further argues he had a TRO against Sue when he photographed her, and Sue was in violation of that restraining order when she drove by his worksite.

We reject those arguments. Judge Katz found Diane credible when she testified that Joe left his supervised parenting time early and went to Hartshorn Drive because he learned Sue would drive on the street. He reasoned Joe's

13

presence on Hartshorn Drive was "convenient and contrived," and that Joe photographing Sue was a way of letting her know he was there. The court did not find Joe credible when he testified that he went to Hartshorn Drive to pick up stone from his worksite and transport it to another property and that he took a photograph of Sue to protect himself. Judge Katz found Joe's reasoning was a "cover up" because he knew Sue would be on Hartshorn Drive and that this incident, in addition to Joe's prior and subsequent conduct, put Sue at risk. Accordingly, we discern no error in Judge Katz's interpretation of <u>D.G.M.</u> or his finding that Joe committed the predicate act of contempt.

     C.     The Dismissal of Joe's Claims Against Sue.

Initially, we hold that Joe's appeal of the order denying his request for a FRO is timely. The orders granting an FRO to Sue and denying an FRO to Joe were both entered on November 13, 2019, following a joint trial. The FRO in favor of Sue allowed her to file a motion for compensatory damages. The parties resolved that issue through a consent order entered on January 31, 2020. Soon thereafter, Joe filed his notice of appeal from both orders. Since both domestic violence complaints were tried together, we deem the filing of the notice of appeal to be timely. <u>See</u> <u>R.</u> 2:4-1(a) (appeals from final judgments "shall be filed within 45 days of their entry").

In his domestic violence complaint, Joe alleged that Sue committed four predicate acts: assault, harassment, stalking, cyber-harassment, and terroristic threats. We have already identified the elements of an assault.

Under N.J.S.A. 2C:33-4,

> a person commits a petty disorderly persons offense [of harassment,] if, with purpose to harass another, he [or she]:
>
>> a. [m]akes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>>
>> b. [s]ubjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>>
>> c. [e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

To prove stalking, the claimant must show that:

> 1) defendant engaged in speech or conduct that was directed at or toward a person, 2) that speech or conduct occurred on at least two occasions, 3) defendant [purposefully or knowingly] engaged in speech or a course of conduct that is capable of causing a reasonable person to fear for herself or her immediate family bodily injury or death, and 4) defendant

knowingly, recklessly or negligently caused a reasonable fear of bodily injury or death.

[H.E.S. v. J.C.S., 175 N.J. 309, 329 (2003) (citing N.J.S.A. 2C:12-10).]

Cyber-harassment occurs when a person,

while making a communication in an online capacity via any electronic device or through a social networking site and with the purpose to harass another…[,]

(1) threatens to inflict injury or physical harm to any person or the property of any person,

(2) knowingly sends, posts, comments, requests, suggests, or proposes any lewd, indecent, or obscene material to or about a person with the intent to emotionally harm a reasonable person or place a reasonable person in fear of physical or emotional harm to his person; or

(3) threatens to commit any crime against the person or the person's property.

[N.J.S.A. 2C:33-4.1(a)(1) to (3).]

As already detailed in our discussion of his opinion, Judge Katz did not find that Joe had established any of the alleged predicate acts. His fact findings are supported by substantial credible evidence, and we discern no error in his analysis of the law.

Joe argues that Judge Katz's analysis of his claims of harassment and stalking were based on an erroneous view of the law that "tainted" Judge Katz's "erroneous" findings of fact. Specifically, Joe argues that Sue harassed him under N.J.S.A. 2C:33-4(a) and -4(c). He takes issue with Judge Katz's findings of fact with respect to notes Sue prepared about events in 2019. Joe also argues that Judge Katz did not consider all the circumstances when he found that Sue did not engage in a course of conduct for the purpose to harass Joe, and when Judge Katz found that Joe had no reason to be fearful of Sue. Finally, Joe takes issue with Judge Katz's findings concerning the incident where Sue allegedly ripped Joe's shirt on the way to a train station.

All Joe's arguments are simply disputes about Judge Katz's factual findings. The evidence pointed to by Joe reflects competing views of the facts. Those differing views, however, do not undermine the substantial credible evidence in the record supporting Judge Katz's findings.

To the extent that Joe makes other arguments that we have not expressly addressed, we deem those arguments to lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E). Accordingly, the orders challenged on both appeals are affirmed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17                                                                        A-2300-19