# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3125-21

M.J.H.,

    Plaintiff-Respondent,

v.

D.H.,

    Defendant-Appellant.

_____

Submitted March 11, 2024 – Decided April 5, 2024

Before Judges Mawla and Marczyk.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-0528-22.

Helmer, Conley & Kasselman, attorneys for appellant (Patricia B. Quelch, of counsel and on the brief).

Erlina Perez Law Firm, LLC, attorneys for respondent (Erlina Perez, of counsel and on the brief).

PER CURIAM

Defendant D.H.[1] appeals from the May 31, 2022 final restraining order ("FRO") entered against him and in favor of plaintiff M.H. pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35 ("PDVA").[2] Following our review of the record and applicable legal principles, we vacate and remand for further proceedings consistent with this opinion.

I.

M.H. and D.H. were married and had two children, Eileen and Luke, who were age sixteen and four respectively at the time of the FRO hearing. The parties were married for sixteen years before separating in 2020. M.H. obtained a temporary restraining order ("TRO") on August 19, 2021. The TRO was subsequently amended on November 16, 2021.[3]

---

[1] We refer to the parties and their children using either initials or pseudonyms to protect their privacy and the confidentiality of these proceedings. R. 1:38-3(d)(9).

[2] D.H.'s request for an FRO was denied. He does not appeal from that order, and we confine our discussion to the facts surrounding M.H.'s FRO.

[3] The parties do not dispute the TRO was amended on November 16, 2021. However, the amended TRO produced in D.H.'s appendix is dated January 26, 2022. Based on the court's description of the allegations in the amended TRO on the record, these two TROs appear to contain the same information.

The original TRO alleged M.H. was being blackmailed by D.H., who threatened to send nude photos of her to the school where she had taught for several years. She further claimed he had relationships with other women and made her tell the other women her relationship with D.H. was over. Also, D.H. would disconnect the Wi-Fi at her residence to "try to control the entire family." The TRO also referenced a history of seven reported domestic disputes. Notably, there are no details provided regarding these incidents other than "all [of them were] verbal disputes[,] nothing physical."

The amended TRO detailed various acts between August and September 2021. Specifically, M.H. alleged D.H.: threatened to send videos of M.H. screaming and crying to her school to show she was not capable of teaching; stopped paying for internet, cable, and cell phones; caused M.H. to incur E-ZPass fines; attempted to take $2,787.44 from M.H.'s savings account; improperly took M.H.'s purse, diamond ring, and computer when he went to her home with law enforcement to retrieve his belongings after her TRO was entered; changed her Instagram and Facebook accounts; improperly forwarded her new credit card to his address; screamed at M.H. on another occasion when he was escorted by police to her residence to retrieve additional belongings; charged over $7,000 in expenditures to M.H.'s credit card without her

3

permission; and followed her to a Target store and falsely accused her of screaming at him and violating a TRO he had obtained against her.

The trial was conducted over six days between December 2021 and April 2022. M.H. recounted the events in the TROs. Importantly, for purposes of this appeal, she also testified regarding several other incidents involving the parties. She testified that in December 2017, D.H. threatened to drop Luke, who was an infant at the time, if she did not give him a diamond ring. In August 2021, Eileen testified D.H. threatened to break her arm if she did not turn over her phone to him. These incidents were not set forth in either TRO.

M.H. testified that in August 2021, while driving home from a vacation in Florida, D.H. told her she was a bad person and would "pay . . . with the death of one of [her] children." She testified D.H. physically assaulted her Father's Day weekend in 2018 when D.H. went to the family home, got angry with M.H., and "threw [her] to the floor." She claimed he started hitting her with a lot of force against the floor until she screamed. D.H. also forced her to have sex during the August 2021 Florida vacation. These physical and sexual assaults were also not contained in M.H.'s TROs.[4]

_____

[4] M.H.'s brief notes "[t]hroughout the marriage [D.H.] physically and verbally abused [M.H.]" leading to the filing of the TRO and that the TRO "detailed the

4

The trial court ultimately granted M.H. an FRO. As to the first prong of Silver,[5] it explained that M.H. had established D.H. committed the predicate act of harassment. The court found "problematic" D.H.'s meddling with M.H.'s mail, his actions to change her social media passwords, changing her email account, withdrawing money from her bank account, and using her E-ZPass. It noted these incidents "demonstrate that [D.H.'s] actions [were] not, as argued, for a legitimate purpose. But, rather, were designed to annoy or alarm [M.H.]" The trial court further determined, as discussed more fully below, that M.H. satisfied prong two of Silver and needed an FRO.

## II.

D.H. argues the trial court incorrectly entered an FRO by relying on information not contained within the TRO or amended TRO in violation of his due process rights. He further contends the trial court's findings of credibility are not entitled to our deference. He also asserts the evidence did not support the issuance of an FRO against him.

---

years long abuse [M.H.] has suffered at the hands of [D.H.]" She does not explain, however, why the alleged acts of physical abuse or threats of physical violence toward the children were not contained in the TRO.

[5] Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006).

A-3125-21

Our scope of review is limited when considering an FRO issued by the Family Part. See D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). That is because "we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." Ibid. "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Deference is particularly appropriate where the evidence is largely testimonial and hinges upon a court's ability to make assessments of credibility. Id. at 412. We review de novo the court's conclusions of law. S.D. v. M.J.R., 415 N.J. Super. 417, 430 (App. Div. 2010).

The entry of an FRO requires the trial court to make certain findings, pursuant to a two-step analysis. See Silver, 387 N.J. Super. at 125-27. Initially, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. The trial court should make this determination "in light of the previous history of violence between the parties." Ibid. (quoting Cesare, 154 N.J. at 402). Secondly, the court must determine "whether a restraining order is necessary, upon an evaluation of the

factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6),[6] to protect the victim from an immediate danger or to prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b) (stating, "[i]n proceedings in which complaints for restraining orders have been filed, the court shall grant any relief necessary to prevent further abuse")); see also J.D. v. M.D.F., 207 N.J. 458, 476 (2011).

## A.

D.H. argues that "the record is replete with testimony that fell outside the parameters of the plaintiff's TRO and amended TRO," and M.H. "did not avail herself" of the opportunity to further amend her TRO when it was apparent she would raise various incidents not addressed in the initial TROs. Further, the lack of notice regarding M.H.'s testimony outside the TRO violated his due

---

6 The six factors are:

> (1) [t]he previous history of domestic violence between the plaintiff and defendant, including threats, harassment, and physical abuse; (2) [t]he existence of immediate danger to person or property; (3) [t]he financial circumstances of the plaintiff and defendant; (4) [t]he best interests of the victim and any child; (5) [i]n determining custody and parenting time the protection of the victim's safety; and (6) [t]he existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a)(1) to (6).]

process rights thereby requiring the FRO to be vacated. He asserts the due process violations impacted the court's credibility findings.

D.H. objected to M.H.'s testimony regarding specific incidents related to his alleged prior history of domestic violence. In response to his objection regarding M.H.'s testimony concerning the 2018 Father's Day weekend assault, the trial court acknowledged "there is no designation as to whether there's any sort of assault" in the TRO, but the court noted it was not going to "turn a blind eye" to prior incidents of domestic violence. It noted that if M.H. testified beyond the scope of her TRO "that's certainly subject to a credibility determination." Later, in response to an objection regarding M.H.'s testimony about when D.H. threatened that one of her children would die because she is a bad person, the court again allowed the testimony, despite the absence of this allegation in the TRO. The court stated this testimony was "subject to her credibility assessment based on [defense counsel's] cross examination as to why those details were not included" in the TRO. The court then determined D.H. would have a "continuing objection" presumably to all situations where M.H. addressed an incident not set forth in the TRO.

The trial court determined D.H. committed a predicate act of harassment under prong one of Silver, which warranted further consideration as to whether

M.H. satisfied prong two of <u>Silver</u>. As to the second prong of <u>Silver</u>, the trial

court opined:

> Here, we have a party in [M.H.] who has been consistently controlled, and . . . concurrently, we have a party in [D.H.], who trivializes the plight that he created for [M.H]. This is precisely what the [PDVA] was designed to address, and the parties [it was] designed to protect.
>
> Counsel for [M.H.] has characterized the actions of [D.H.] as compulsive and impulsive. As soon as the relationship deteriorated between the parties, [D.H.] has demonstrated the controlling behavior by shutting of[f M.H. and Eileen's] cell phones, or cancelling the Netflix account. He continued to meddle with [M.H.'s] cell phone, modifying certain text messages. He used her email address to attempt to show her job that [M.H.] was suicidal. . . .
>
>     . . . .
>
> <u>The prior history, the behavior of [D.H.] in this matter that comprises the record, and that [D.H.] has difficulty in [con]trolling his behavior, and that his behavior also indicates a substantial control issue and the need to assert it upon [M.H.], is overwhelmingly apparent.</u>
>
>     . . . .
>
> At its core, the 1991 [PDVA] effectuates the notion that a victim of domestic violence is, essentially, entitled to be left alone. <u>State v. Hoffman</u>, 149 N.J. [564,] 584 [(1997)].

> The evidence presented is that [M.H] would not want anything more than this, and that [D.H.] is less capable and willing to permit it.
>
> [(Emphasis added).]

In finding M.H. needed an FRO based on "the prior history" of D.H.'s behavior in "the record," the court then specifically referenced the "allegations [that] were made about physical harm to [Luke]." This was one of several incidents discussed at trial that was not referenced in the TRO or amended TRO.

"Due process is 'a flexible [concept] that depends on the particular circumstances.'" H.E.S. v. J.C.S., 175 N.J. 309, 321 (2003) (alteration in original) (quoting Doe v. Poritz, 142 N.J. 1, 106 (1995)). "What that means is that '[a]t a minimum, due process requires that a party in a judicial hearing receive "notice defining the issues and an adequate opportunity to prepare and respond."'" J.D., 207 N.J. at 478 (alteration in original) (quoting H.E.S., 175 N.J. at 321).

> There can be no adequate preparation where the notice does not reasonably apprise the party of the charges, or where the issues litigated at the hearing differ substantially from those outlined in the notice. It offends elemental concepts of procedural due process to grant enforcement to a finding neither charged in the complaint nor litigated at the hearing.

[Nicoletta v. N.J. Dist. Water Supply Comm'n, 77 N.J. 145, 162 (1978) (quoting Green v. McElroy, 360 U.S. 474, 496 (1959)).]

The Supreme Court in J.D. discussed due process issues arising in a domestic violence trial involving analogous facts as the matter before us, which guides our analysis here. 207 N.J. at 465. In J.D., the Court addressed the due process rights of a defendant with respect to receiving notice of prior acts of domestic violence identified for the first time at an FRO hearing. Id. at 466-68. There, the plaintiff filed a domestic violence complaint alleging, in addition to a predicate act of domestic violence, four prior acts of domestic violence. Ibid. At the hearing, in response to an open-ended question from the court, the plaintiff testified with respect to multiple prior acts of domestic violence not alleged in the complaint. Ibid. At the conclusion of the plaintiff's testimony, the defendant told the court that he was not prepared to respond to the plaintiff's testimony about the prior acts of domestic violence not alleged in the complaint. Id. at 468-69. Notwithstanding the defendant's statement, the trial court proceeded to take testimony from the defendant regarding the alleged past acts. Id. at 469. The trial court subsequently relied on the past acts of domestic violence not alleged in the complaint when reaching its decision that the alleged predicate act constituted harassment. Id. at 470.

A-3125-21

On appeal to us, the defendant argued, among other things, that he was denied due process because the trial court permitted testimony about past acts of domestic violence not alleged in the complaint. Ibid. We affirmed, concluding the contested testimony was properly admitted. Id. at 470-71.

The Supreme Court reversed. Id. at 471. It noted that during FRO hearings, parties often expand upon the history of domestic abuse alleged in their complaints. Id. at 479. In addition, trial courts often will attempt to elicit a fuller picture of the history of the parties' relationship during a hearing. Ibid. The Court held by eliciting testimony that "allows" the prior history alleged in the complaint "to be expanded," the trial court must recognize it "permitted an amendment to the complaint and must proceed accordingly." Id. at 479-80. As the Court explained,

> To be sure, some defendants will know full well the history that plaintiff recites and some parties will be well-prepared regardless of whether the testimony technically expands upon the allegations of the complaint. Others, however, will not, and in all cases the trial court must ensure that defendant is afforded an adequate opportunity to be apprised of those allegations and to prepare. See H.E.S., . . . 175 N.J. at 324 (concluding that allowing defendant only twenty-four hours to prepare violates due process).
>
> [Id. at 480.]

A-3125-21

The Court further noted, "[w]hen permitting [the] plaintiff to expand upon the alleged prior incidents and thereby allowing an amendment to the complaint, the court also should have recognized the due process implication of [the] defendant's suggestion that he was unprepared to defend himself." Ibid. Importantly, the Court commented, "[a]lthough defendant's assertion that he needed time to prepare was not cloaked in the lawyer-like language of an adjournment request and was made as part of a longer response to a question, it was sufficient to raise the due process question for the trial court and it should have been granted." Ibid.

The J.D. Court further commented, "[o]ur courts have broad discretion to reject a request for an adjournment that is ill founded or designed only to create delay, but they should liberally grant one that is based on an expansion of factual assertions that form the heart of the complaint for relief." Ibid. Moreover, granting an adjournment to give the defendant time to prepare to address new allegations of prior acts of domestic violence poses "no risk to plaintiff" because "courts are empowered to continue temporary restraints during the pendency of an adjournment," which will fully protect the plaintiff while affording the defendant due process. Ibid. Accordingly, the Court held that the denial of the

defendant's adjournment request, along with other errors, warranted reversal of the FRO and remanded for a new trial. Id. at 488.

Here, the court admitted M.H.'s testimony regarding undisclosed prior acts of domestic violence. In allowing this testimony, the court noted it was "subject to [a] credibility assessment based on [defense counsel's] cross examination as to why those [incidents] were not included" in the TRO. The court's rationale, however, would open the door for parties to circumvent requirements to provide adversaries with notice regarding prior acts of domestic violence. We disapprove of this approach because it runs afoul of the due process concerns addressed in J.D. The better practice was to afford D.H. notice not only of the predicate acts being alleged, but also the prior acts of domestic violence M.H. intended to adduce.

We recognized under J.D. there may be times when a party expands on a prior history of domestic violence to give context to "otherwise ambiguous communications or behavior." Id. at 479. Here, however, M.H. only generally referenced a prior history of domestic violence in the TRO complaint. Moreover, she specifically certified the unidentified prior acts were all "verbal disputes" and that there was "nothing physical." M.H. then proceeded to testify D.H. both physically and sexually assaulted her. She further testified he

14

threatened to kill one of her children and on another occasion threatened to drop Luke when he was an infant in a dispute about a ring. Further, Eileen testified about D.H. threatening to break her arm. D.H. was provided no notice of these allegations.

The new matters raised by M.H. at trial were not trivial events. Rather, they involved serious allegations of prior domestic violence. The incidents were not closely related, or derivative of the allegations set forth in the TRO such that it was reasonable for D.H. to have expected M.H. to discuss these matters at trial, particularly when the initial TRO noted there were no incidents of physical abuse. D.H. was entitled to notice of these allegations in order to defend against them. The court should have provided a short adjournment for M.H. to amend her TRO to provide D.H. an opportunity to prepare an appropriate defense.

M.H. had attempted to amend her TRO a second time to include the incident where D.H. threatened to kill one of her children. For some reason, that never occurred. Accordingly, D.H. did not receive proper notice of the claims being asserted against him. Because D.H. was not afforded due process to properly address the new allegations at trial, we are constrained to remand for a new trial as to M.H.'s claims only. Because we are vacating the FRO, we need not reach the balance of D.H.'s remaining arguments raised on appeal.

Although we recognize the time the trial court expended in this matter, on remand, we direct a different judge to try this case. Pellicer v. St. Barnabas Hosp., 200 N.J. 22, 59-60 (2009) (citing Entress v. Entress, 376 N.J. Super. 125, 133 (App. Div. 2005) (remanding to different judge "to avoid the appearance of bias or prejudice based upon the judge's prior involvement" and credibility determinations)). We take no position on whether there are grounds to establish a predicate offense or whether M.H. can satisfy the second prong of Silver and leave that to the sound discretion of the new judge.

For the reasons noted above, we vacate the FRO, reinstate the TRO, and remand the matter for a new trial. M.H. shall have fifteen days to file an amended TRO to incorporate any allegations she intends to advance at the second trial to provide D.H. proper notice of the allegations against him.

To the extent we have not addressed any remaining arguments, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-3125-21